JUSTICE TRIEWEILER
delivered the Opinion of the Court.
Plaintiff Steven J. Harman filed his complaint in the District Court for the Thirteenth Judicial District in Yellowstone County to recover damages pursuant to a vehicle service contract entered into with a Billings auto dealer. Defendant MIA Service Contracts (MIA) was the original administrator of the contract and adjusted claims made pursuant to the contract. Defendant American Adjustment Company, Inc. (AAC), later assumed responsibility for adjusting plaintiff’s claim. The District Court concluded that plaintiff was not entitled to recover against defendant AAC under any theory alleged in plaintiff’s complaint and granted AAC’s motion dismissing plaintiff’s claim against it by summary judgment. From that judgment, plaintiff appeals. We affirm in part and reverse in part.
The issues on appeal are:
*69 1. Was plaintiff a third-party beneficiary of a contract entered into by defendant American Adjustment Company, Inc., and therefore, entitled to enforce that contract?
2. Can plaintiff sue American Adjustment Company, Inc., or Century Indemnity Company, for violations of the Unfair Trade Practices Act found at § 33-18-201, MCA, or is such a suit barred by plaintiff’s failure to first comply with § 33-18-242(6)(b), MCA?
FACTUAL BACKGROUND
On November 23,1985, plaintiff purchased a Jeep Cherokee from Bert Arnlund Chrysler in Billings. On August 29, 1986, he paid Arnlund $655 for a vehicle service contract in which Arnlund agreed to make certain repairs to plaintiff’s vehicle beyond the period of time covered in the manufacturer’s warranty agreement.
The contract provided that it would be administered by MIA Service Contracts and that the administrator must be contacted for authorization of repairs. The contract also provided that the administrator did not assume any liability to the contract holder, but that the administrator’s liability was to the dealer in accordance with their separate agreement.
From what can be determined from the record, it appears that MIA helped dealers throughout the country market vehicle service contracts, and then had a separate agreement with each dealer to administer the contracts by adjusting claims made pursuant to the contracts after they were sold. Pursuant to a separate agreement between MIA and the dealer, repairs could not be made without MIA’s prior approval. A portion of the premium would be retained by the dealer and put into a reserve fund to pay some claims made pursuant to the contracts. A portion of the premium was retained by the dealer as his fee for selling the contract; a portion was paid to MIA to administer the contract; and a portion was paid by MIA to Century Indemnity Company (Century) to insure against those claims which exceeded the dealer’s responsibility under its agreement with MIA and Century. Century is a wholly owned subsidiary of CIGNA.
In 1987, MIA declared itself bankrupt and stopped doing business as administrator of the contracts.
As mentioned above, Century had sold an insurance policy to Arnlund covering him against vehicle service contract claims above those amounts which were covered by the reserve fund maintained by Arnlund.
*70 Another wholly owned subsidiary of CIGNA, AAC, had been basically dormant until 1988 when it was resurrected by Century for the sole purpose of adjusting any claims made pursuant to contracts marketed by MIA prior to its bankruptcy. According to AAC’s general manager, Robert McAllister, the agreement to handle these claims would have been entered into between AAC and Century. However, it is clear from his testimony that AAC assumed those responsibilities for adjusting claims that had previously been assigned to MIA pursuant to its separate contract with Arnlund.
On April 12, 1990, the fuel pump in plaintiff’s Jeep Cherokee malfunctioned and he replaced it while in Bozeman at a cost of $144. He submitted a claim to AAC for the amount of that repair. However, defendant refused to authorize payment for the repair based upon the fact that defendant had not given prior approval for the expenditure.
On October 17,1990, plaintiff discovered damage to his front drive line axle and requested coverage from AAC for the cost of that repair. However, AAC denied that the drive line axle was a covered part under the vehicle service contract. Prior to plaintiff’s purchase of the vehicle service contract, Arnlund and MIA provided plaintiff with a brochure which indicated that the drive line would be covered.
On November 13, 1990, plaintiff filed a complaint against AAC and MIA in which he described the vehicle service contract and alleged that it had been breached by defendants. In addition to his claim for breach of contract, plaintiff alleged that defendants’ denial of his claims was a violation of the covenant of good faith and fair dealing, that defendants were negligent, that defendants violated § 33-18-201(5), MCA, of the Unfair Trade Practices Act, and that defendants were guilty of constructive fraud, gross negligence, and oppression which entitled plaintiff to punitive damages pursuant to § 27-1-221, MCA.
Defendant MIA did not appear and did not respond to plaintiff’s allegations.
On April 11,1991, defendant AAC moved for summary judgment for the reason that it had no direct contractual relationship with plaintiff and that the third-party claim filed by plaintiff pursuant to § 33-18-242, MCA, must await resolution of any underlying claim that plaintiff had against the auto dealer, Arnlund.
On April 1,1992, the District Court entered its memorandum and order granting AAC’s motion for summary judgment, and on April 21, 1992, final judgment was entered by the District Court in favor of AAC and certified as final pursuant to Rule 54(b), M.R.Civ.P.
*71 On appeal from the judgment of the District Court, plaintiffs arguments focus on two principal issues. The first is whether plaintiff had enforceable rights as a third-party beneficiary of contracts in which AAC promised to perform services for plaintiff’s benefit.The second issue is whether AAC can be sued as an insurer for violation of the Unfair Trade Practices Act without any prior resolution of plaintiff’s right under its contract with the auto dealer, Arnlund.
CONTRACT ISSUE
The District Court found that the vehicle service contract was entered into between plaintiff and his auto dealer. It also determined that any repair work done under the contract must be approved by the administrator (MIA), but that the administrator assumed no personal liability to plaintiff.
The District Court also found that Century insured Arnlund against claims under extended service contracts, and that when MIA folded, Century resurrected AAC to adjust claims under the service contracts. However, the court concluded that neither Century nor AAC were involved in marketing the vehicle service contracts.
Based upon the discrepancy between the brochure used in marketing the contract and the terms of the written agreement itself, the District Court concluded that there was at least a genuine issue of fact as to whether there was coverage under the contract for the claims made by plaintiff. The District Court also concluded that there was a genuine issue of fact regarding whether Arnlund was acting as an agent for MIA, which would make MIA liable for performance under the contract. Therefore, the District Court concluded that plaintiff could sue both the dealer and MIA. However, Arnlund was not a party to the suit and MIA was involved in bankruptcy proceedings and had not appeared.
The District Court concluded that since neither Century (whom plaintiff sought to join as a defendant by amendment) nor AAC were parties to the contract, they could not be sued for breach of the contract nor its related theories. Furthermore, the District Court concluded that even though Century did insure Arnlund, and AAC acted on Century’s behalf in adjusting claims pursuant to that policy of insurance, there was no direct policy of insurance issued from either Century or AAC to plaintiff. Therefore, any claim that plaintiff may have pursuant to the Unfair Trade Practices Act is a third-party claim; and before it can be pursued, plaintiff would first have to *72 resolve his underlying claim against the dealer pursuant to § 33-18-242(6)(b), MCA.
While it is true that plaintiff had no direct contractual arrangement with AAC, AAC did, by necessary inference, enter into some agreement with Century to adjust claims made pursuant to plaintiff’s vehicle service contract with Arnlund. When it did so, it assumed the administrative responsibility formerly promised by MIA. It also impliedly agreed to handle those responsibilities in a manner consistent with Arnlund’s obligations under the contract.
It is plaintiff’s position that he was the intended beneficiary of AAC’s agreement to adjust claims consistent with Arnlund’s contractual obligations, and that as an intended beneficiary, he has the right to enforce those obligations against the promisor, AAC. We agree.
The rule regarding the rights of third-party beneficiaries to enforce contracts is accurately summarized at Restatement (Second) of Contracts § 304 (1981), where it provides that “[a] promise in a contract creates a duty in the promisor to any intended beneficiary to perform the promise, and the intended beneficiary may enforce the duty.”
The issue then is whether plaintiff was an intended beneficiary of AAC’s agreement to administer claims under the contract. The answer is found in Restatement (Second) of Contracts § 302 (1981), where intended beneficiaries are described as follows:
(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
In this case, Century enlisted the services of AAC to adjust claims under Arnlund’s extended service agreement because of Century’s obligation to insure against those claims and possibly pay money to claimants like plaintiff. Therefore, we conclude that when AAC agreed to administer the plaintiff’s rights under the contract, the performance of its promise to do so satisfied an obligation of Century and Arnlund to plaintiff. And since AAC has exclusive authority to approve or disapprove claims under the contract, we also conclude that it is appropriate to recognize plaintiff’s right to performance in order to effectuate the intentions of the parties that *73 plaintiff receive all benefits provided for under his contract with Arnlund.
For these reasons, we conclude that plaintiff was an intended third-party beneficiary of AAC’s agreement with Century, and he had a right to seek contract damages from AAC for its failure to perform its administrative responsibilities in accordance with his rights under the vehicle service contract. The District Court’s summary judgment is reversed and this case is remanded to the District Court for a factual determination of plaintiff’s rights under that contract.
UNFAIR TRADE PRACTICES ACT
The District Court found that there was no insurance contract entered into between plaintiff and either AAC or Century. Plaintiff does not disagree.
Century insured Arnlund, and AAC agreed with Century to administer and adjust claims made against Arnlund. Therefore, any claim by plamtiff against Century or AAC for their failure to handle his claim in accordance with the provisions of the Unfair Trade Practices Act found at § 33-18-201, MCA, is a third-party claim. Pursuant to § 33-18-242(6)(b), MCA:
A third-party claimant may not file an action under this section until after the underlying claim has been settled or a judgment entered in favor of the claimant on the underlying claim.
We agree with the District Court’s holding that pursuant to § 33-18-242, MCA, no claim under the Unfair Trade Practices Act can be brought against AAC or Century until plaintiff first asserts and resolves his claim on the underlying contract agamst AAC or Amlund. That part of the District Court’s summary judgment dismissing plaintiff’s claim pursuant to § 33-18-201, MCA, is affirmed.
For the foregoing reasons, the judgment of the District Court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
JUSTICES HARRISON and HUNT and DISTRICT JUDGE McCARTER sitting in place of JUSTICE GRAY concur.