

DA 09-0682

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 322

JEANNETTE DIAZ, LEAH HOFFMANN-BERNHARDT,
and RACHEL LAUDON, individually and on behalf of
others similarly situated,

        Plaintiffs and Appellants,

  v.

BLUE CROSS AND BLUE SHIELD OF MONTANA,
NEW WEST HEALTH SERVICES, MONTANA
COMPREHENSIVE HEALTH ASSOCIATION,
STATE OF MONTANA, and JOHN DOES 1-100,

        Defendants and Appellees.

APPEAL FROM:    District Court of the First Judicial District,
                In and For the County of Lewis and Clark, Cause No. BDV 2008-956
                Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

           James G. Hunt (argued), Jonathan McDonald; Dix, Hunt & McDonald,
           Helena, Montana

           Erik B. Thueson (argued), Thueson Law Office, Helena, Montana

           Jory C. Ruggiero, J. Breting Engel; Western Justice Associates, PLLC,
           Bozeman, Montana

      For Appellees:

           Leo S. Ward, Kimberly A. Beatty, Daniel J. Auerbach (argued);
           Browning, Kaleczyc, Berry & Hoven; Helena, Montana (for New West
           Health Services)

           Robert C. Lukes (argued), Kevin A. Twidwell; Garlington, Lohn &
           Robinson, Missoula, Montana (for State of Montana)

Michael F. McMahon, Stefan T. Wall (argued); McMahon Law Firm, PLLC, Helena, Montana (for Blue Cross and Blue Shield of Montana, Inc.)

Argued: August 12, 2011
Submitted: August 30, 2011
Decided: December 21, 2011

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 The First Judicial District Court, Lewis and Clark County, denied Jeannette Diaz (Diaz) and Leah Hoffmann-Bernhardt's (Hoffmann-Bernhardt) motion for class certification and concluded third-party administrators of the State of Montana's (State) employee healthcare benefit plan are not subject to made-whole laws established under §§ 2-18-901 to -902 and 33-30-1101 to -1102, MCA. Diaz and Hoffmann-Bernhardt appeal.[1]

¶2 We affirm in part and reverse in part and remand this matter to the District Court for further proceedings consistent with this Opinion.

## BACKGROUND

¶3 The State provides a self-funded employee healthcare benefit plan for its employees and their dependents. The State plan was established under Title 2, chapter 18, part 8, MCA, to "provide state employees with adequate group hospitalization, health, medical, disability, life, and other related group benefits in an efficient manner and at an affordable cost." Section 2-18-808, MCA. Approximately 32,000 members are currently enrolled in the State plan. Funding for the State plan is derived from employee and employer contributions. Blue Cross and Blue Shield of Montana (BCBS) and New West Health Services (New West) (collectively "TPAs") administer the State plan and receive a flat fee per member for their services. BCBS and New West also independently administer and operate their own healthcare policies for profit.

---

[1] A third plaintiff, Rachel Laudon, and a third defendant, Montana Comprehensive Health Association, entered a settlement and are not parties to this appeal.

3

¶4 Diaz was injured in an automobile collision caused by an insured negligent tortfeasor. Diaz was insured for medical expenses through the State plan, which BCBS administered. The tortfeasor's insurer accepted liability and paid policy limits, which included payment of Diaz's medical expenses. Diaz alleges BCBS violated her made-whole rights when it refused to pay Diaz for her medical expenses that had already been paid by the tortfeasor's insurer.

¶5 Like Diaz, Hoffmann-Bernhardt was injured in an automobile collision caused by an insured negligent tortfeasor. The tortfeasor's insurer paid some of Hoffmann-Bernhardt's medical expenses directly to her medical providers. New West, the administrator of Hoffmann-Bernhardt's State plan, also paid Hoffmann-Bernhardt's medical providers for her medical expenses. Subsequently, the medical providers reimbursed New West for the medical expenses it had paid. Hoffmann-Bernhardt submitted a claim to New West, requesting that it pay her the money her medical providers reimbursed New West. Hoffmann-Bernhardt claims New West's failure to pay her the reimbursement violates her made-whole rights.

¶6 Diaz and Hoffmann-Bernhardt filed suit against the State, BCBS, and New West for allegedly violating their made-whole rights by failing to conduct a made-whole analysis before exercising subrogation rights. Diaz and Hoffmann-Bernhardt moved for class certification pursuant to M. R. Civ. P. 23, seeking to include in the lawsuit individuals who had their benefits reduced under the State plan, as well as individuals who had their benefits reduced under policies independently issued and administered by BCBS and New West. Diaz and Hoffmann-Bernhardt requested a declaratory ruling that

4

the State's, BCBS's, and New West's practices violate Montana's made-whole laws; an injunction requiring the State, BCBS, and New West to calculate and pay amounts wrongfully withheld, plus interest; and an order enjoining the State, BCBS, and New West from continuing to violate the made-whole rights of their insureds. The District Court denied class certification. Diaz and Hoffmann-Bernhardt appealed to this Court.

¶7 In order to resolve the class certification issue, this Court remanded the matter to the District Court to determine whether Montana's made-whole laws apply to TPAs, such as BCBS and New West. The District Court concluded they did not. Diaz and Hoffmann-Bernhardt now challenge this ruling and appeal the following issues:

¶8 Issue One: Did the District Court err in determining the made-whole laws codified in §§ 2-18-901 to -902 and 33-30-1101 to -1102, MCA, do not apply to TPAs?

¶9 Issue Two: Did the District Court err in denying class certification?

## STANDARDS OF REVIEW

¶10 This Court reviews a district court's conclusions of law for correctness. *Shattuck v. Kalispell Regl. Med. Ctr., Inc.*, 2011 MT 229, ¶ 8, 362 Mont. 100, 261 P.3d 1021. We review a district court's ruling on a motion to certify a class for an abuse of discretion. *Ferguson v. Safeco Ins. Co. of Am.*, 2008 MT 109, ¶ 10, 342 Mont. 380, 180 P.3d 1164. A district court commits an abuse of discretion when it "acts arbitrarily without conscientious judgment or exceeds the bounds of reason." *State v. Essig*, 2009 MT 340, ¶ 14, 353 Mont. 99, 218 P.3d 838. In class certification cases, "[t]he judgment of the [district] court should be accorded the greatest respect because it is in the best position to

5

consider the most fair and efficient procedure for conducting any given litigation." *Sieglock v. Burlington N. Santa Fe Ry. Co.*, 2003 MT 355, ¶ 8, 319 Mont. 8, 81 P.3d 495.

## DISCUSSION

¶11 *Issue One: Did the District Court err in determining the made-whole laws codified in §§ 2-18-901 to -902 and 33-30-1101 to -1102, MCA, do not apply to TPAs?*

¶12 The made-whole laws applicable to this appeal are found in two separate locations in the MCA: Title 2, chapter 18, part 9, which concerns the State employee benefit plan, and Title 33, chapter 30, part 11, which addresses insurance in the context of "health service corporations." The statutes are indistinguishable in terms of purpose, but are not identically written.

¶13 The District Court examined the contracts between the TPAs and the State and concluded the subrogation statutes did not apply to the TPAs because, in fulfilling their administrative duties under their respective contracts, they did not act as "insurers" or "health care corporations" within the meaning of the subrogation statutes. Specifically, the District Court determined the TPAs merely process claims for a flat fee; they pay claims with State funds; and the State, because it makes the final decision regarding claims, is the party ultimately liable to insureds. The District Court also rejected Diaz and Hoffmann-Bernhardt's argument that the TPAs are liable for violating made-whole laws under a third-party beneficiary theory. We address the subrogation statutes and third-party beneficiary argument in turn below.

*Subrogation Statutes*

6

¶14 "The role of the judge in statutory interpretation 'is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted.' " *Micone v. Dept. of Pub. Health & Human Servs.*, 2011 MT 178, ¶ 12, 361 Mont. 258, 258 P.3d 403 (quoting § 1-2-101, MCA). Where the plain language of the statute is clear and unambiguous, no further statutory interpretation is necessary. *Micone*, ¶ 12.

¶15 As an initial matter, we note Title 33 does not apply to the State employee healthcare benefit plan. Section 33-1-102(7), MCA ("This code does not apply to the state employee group insurance program established in Title 2, chapter 18, part 8 . . . ."). Accordingly, because the TPAs' administration of the State plan is at issue here, the subrogation provisions contained in §§ 33-30-1101 to -1102, MCA, are inapplicable.

¶16 Under § 2-18-902(4), MCA, any right of subrogation is the insurer's. Pursuant to § 2-18-901, MCA, the insurer, "to the extent necessary for reimbursement of benefits *paid* to . . . the insured," has a right of subrogation. (Emphasis added.) Thus, the party who pays the claim is the insurer who possesses the subrogation right. Granting a subrogation right to the party expending funds is consistent with the policy behind our subrogation statutes that "absent repayment of the insurer[,] the insured would be unjustly enriched by virtue of recovery from both the insurer and the wrongdoer, or in absence of such double recovery by the insured, the third party would go free despite his legal obligation in connection with loss." *Skauge v. Mt. Sts. Tel. & Telegraph Co.*, 172 Mont. 521, 524-25, 565 P.2d 628, 630 (1977).

7

¶17 The treatment of the term "insurer" in Title 2 and the factual circumstances present here, as evinced in the TPAs' contracts, clearly establish that the State is the insurer, not the TPAs. Under the BCBS contract, BCBS immediately pays claims from its personal account, but it is reimbursed by the State on a daily basis. Under the New West contract, New West draws directly from State funds to pay claims. The State is the party who provides the funds to pay claims and who ultimately accepts reimbursements from medical providers and/or does not pay medical providers who have already received payments from tortfeasors' insurance companies. The State also makes the final decision regarding claim denial. While the TPAs manage State funds as administrators of the State plan, they do not provide or retain the funds. Therefore, they are not insurers within the meaning of §§ 2-18-901 to -902, MCA, and, in this case, are not independently liable for violating the made-whole laws.

*Third-Party Beneficiary Theory*

¶18 Not everyone who may benefit from performance, or who may suffer from non-performance, of a contract between two other persons is permitted to enforce the contract. Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* vol. 13, § 37:7, 29 (4th ed., West 2000). A stranger to a contract cannot sue for breach of contract unless he or she is the intended third-party beneficiary of that contract. *Dick Anderson Constr., Inc. v. Monroe Constr. Co., LLC*, 2009 MT 416, ¶ 46, 353 Mont. 534, 221 P.3d 675. This Court, relying upon the *Restatement (Second) of Contracts* § 302 (1981), has described an intended third-party beneficiary as follows:

"(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance."

*Dick Anderson Constr.*, ¶ 47 (quoting *Restatement (Second) of Contracts* § 302(1)(a)-(b)).

¶19    "Performance of a contract will often benefit a third [party,]" but unless the contracting parties intended to benefit the third party, the third party's status is that of an incidental beneficiary. *Restatement (Second) of Contracts* § 302 cmt. e. "[T]here is a plain distinction between a promise, the performance of which may benefit a third party, and a promise made expressly for the benefit of a third party." *McKeever v. Or. Mortg. Co.*, 60 Mont. 270, 273-74, 198 P. 752, 753 (1921) (internal quotation omitted).

¶20    Diaz and Hoffmann-Bernhardt argue the contracts between BCBS and the State and the State and Montana Association of Health Care Purchasers, who in turn contracted with New West, exist to benefit State employees and, as such, give employees a right to sue either or both the State and the TPAs when their made-whole rights are violated. Diaz and Hoffmann-Bernhardt rely upon *Gardner & White Consulting Servs., Inc. v. Ray*, 474 S.E.2d 663 (Ga. App. 1996), and *Harman v. MIA Serv. Contracts*, 260 Mont. 67, 858 P.2d 19 (1993), in support of their claim that contracts between an insurer and a TPA

create a third-party beneficiary contract, allowing insureds to sue either party to the contract.

¶21    Both cases are distinguishable from the present case. Although the *Gardner* court determined that an employee was a third-party beneficiary of a contract between a TPA and self-funded county benefit plan, *Gardner,* 474 S.E.2d at 665-66, subsequent cases have clarified *Gardner*, noting that a plaintiff cannot assume he or she is a third-party beneficiary merely because he or she has benefitted from a contract between an insurer and a TPA. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). Instead, the plaintiff must be able to "show from the face of the contract that it was intended to benefit [him or] her." *Gilmour*, 382 F.3d at 1315.

¶22    In *Harman*, the administrator had *exclusive* authority to approve or disapprove claims under a vehicle service contract, assisted automobile dealerships in marketing service contracts, and received a portion of the premiums from service contracts sold. *Harman*, 260 Mont. at 69, 858 P.2d at 21. Based on the extent of the administrator's involvement, this Court concluded Harman, the owner of a vehicle service contract, was a third-party beneficiary, noting "since [the administrator] has exclusive authority to approve or disapprove claims under the contract . . . it is appropriate to recognize [Harman's] right to performance in order to effectuate the intentions of the parties . . . ." *Harman*, 260 Mont. at 72, 858 P.2d at 23.

¶23    Here, unlike the administrator in *Harman*, the TPAs do not have exclusive authority in administering claims under the State plan. The State and the TPAs contracted for administrative services for the State's benefit in operating its employee

10

healthcare benefit plan. Any benefits insureds receive from the TPAs' expertise in administering claims is merely incidental.

¶24 We conclude BCBS and New West, in their capacities as TPAs in the present case, are not subject to the made-whole laws under either the subrogation statutes or under a third-party beneficiary theory.

¶25 *Issue Two: Did the District Court err in denying class certification?*

¶26 Although we have concluded that neither BCBS nor New West are subject to the made-whole laws under the facts of this case, the question of whether class certification is appropriate with respect to Diaz and Hoffmann-Bernhardt's claims against the State remains to be resolved.

¶27 The propriety of a class action is governed by Rule 23 of the Montana Rules of Civil Procedure. M. R. Civ. P. 23. The threshold inquiry into whether a class action is appropriate requires analysis of Rule 23(a)'s four prerequisites: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Sieglock*, ¶ 10. The party seeking certification bears the burden of establishing that each element of Rule 23 is met. *McDonald v. Washington*, 261 Mont. 392, 400, 862 P.2d 1150, 1155 (1993). Failure of any one of Rule 23(a)'s prerequisites is fatal to class certification. *Murer v. Mont. St. Compen. Mut. Ins. Fund*, 257 Mont. 434, 437, 849 P.2d 1036, 1037 (1993). After a court determines the Rule 23(a) prerequisites are satisfied, its certification analysis shifts to Rule 23(b). M. R. Civ. P. 23(b). Therefore, we must initially turn our inquiry to Rule 23(a)'s four prerequisites.

¶28 Before we do so, however, we have to address arguments by the State and the TPAs that before this Court considers the Rule 23(a) prerequisites, it must first find the class is precisely defined and the identified class representatives are members of the class. Diaz and Hoffmann-Bernhardt describe the members of their proposed class as (1) insureds under health insurance plans and policies administered or operated by the State and the TPAs; (2) who were injured through the legal fault of persons who have legal obligations to compensate them for all damages sustained; and (3) who have not been made whole for their damages because the State and the TPAs have programmatically failed to pay benefits for their medical costs.

¶29 The State and the TPAs argue Diaz and Hoffmann-Bernhardt's class definition is amorphous and has evolved throughout this litigation and, therefore, should be rejected. They rely upon a federal case,[2] *Polich v. Burlington N., Inc.*, 116 F.R.D. 258, 261 (D. Mont. 1987), which provides that before delving into the rigorous analysis required by Rule 23, a court first should consider whether a precisely defined class exists and whether the named plaintiffs are members of the proposed class.

¶30 First, given our decision under Issue One, it is clear the members of the class will be individuals insured under the State plan, just like Diaz and Hoffmann-Bernhardt. Second, the prerequisites set forth in Rule 23(a) sufficiently define a class in this case, and any additional definition by this Court, at this time, is unnecessary. With the class

---

[2] This Court has previously acknowledged that federal authority is instructive on the issue of class certification because Rule 23 is identical to Federal Rule of Civil Procedure 23. *Sieglock*, ¶ 10.

12

description Diaz and Hoffmann-Bernhardt have provided this Court, we now turn our discussion to Rule 23(a)'s prerequisites.

**1. Rule 23(a)**

*Numerosity*

¶31 The element of numerosity "requires that the class be so numerous that joinder of all members is impracticable." *McDonald*, 261 Mont. at 400, 862 P.2d at 1155; M. R. Civ. P. 23(a)(1). "Mere speculation as to satisfaction of the numerosity requirement is not sufficient. Rather, plaintiffs must present some evidence of, or reasonably estimate, the number of class members." *Polich*, 116 F.R.D. at 261. The District Court determined this requirement was met based upon testimony that hundreds of State insureds had been in car crashes over the past eight years. Our review of the record convinces us that the District Court was correct in determining the numerosity element is met.

*Commonality*

¶32 "[C]lass litigation must present a common issue of law *or* fact." *Ferguson* ¶ 16. Regardless of differences among class members, the commonality requirement is met when a single issue is common to all. *Ferguson*, ¶ 16. Commonality is not a " 'stringent threshold and does not impose an unwieldy burden on plaintiffs. . . . [A]ll that is necessary . . . is an allegation of a standardized, uniform course of conduct by defendants affecting plaintiffs.' " *Ferguson*, ¶ 26 (quoting *LaBauve v. Olin Corp.*, 231 F.R.D. 632, 667-68 (S.D.Ala. 2005)).

¶33 The District Court determined this element was not met because a common issue of law or fact did not exist; instead, individualized made-whole assessments were required in each case:

> While a determination will need to be made in each case as to whether Montana common law relating to subrogation has been violated, that determination will require separate mini-trials for each Plaintiff which will include potential determinations as to whether: policy limits were paid by the automobile liability insurer; whether future medical treatment may be required which may necessitate expert testimony from medical practitioners; whether a Plaintiff had other automobile coverage such as medical payments and underinsured coverage; whether the third-party tortfeasor had assets available to contribute to the settlement; and, the amount of medical benefits which were withheld by the State plan . . . and how much of that amount will be necessary to make the insured whole.

¶34 In *Ferguson*, this Court concluded the commonality requirement was satisfied because a common issue of fact and/or law existed regarding whether the insurer had programmatically breached the made-whole laws by failing to make a made-whole determination before exercising its subrogation rights. *Ferguson*, ¶¶ 26-28. Similarly, the class members here share a common issue of fact and/or law as to whether the State is programmatically breaching Montana's made-whole laws by exercising the following exclusion:

> The following services and expenses are not covered:
>
> .   .   .
>
> 5.      Expenses that [an insured] is entitled to have covered, or that are paid under an automobile insurance policy, a premise liability policy, or other liability insurance policy. This includes but is not limited to, a homeowner's policy or business liability policy, or expenses that [an insured] would be entitled to have covered under such policies if not covered by the State Plan.

14

Thus, we conclude that in this case, just as in *Ferguson*, the commonality requirement imposed by Rule 23(a)(2) is met.

*Typicality*

¶35 The typicality requirement under Rule 23(a)(3) is designed to ensure that the named representatives' interests are aligned with the class's interests, the rationale being that " 'a named plaintiff who vigorously pursues his or her own interests will necessarily advance the interests of the class.' " *McDonald*, 261 Mont. at 402, 862 P.2d at 1156 (quoting *Jordan v. Co. of L. A.*, 669 F.2d 1311, 1321 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810, 103 S. Ct. 35 (1982)). The typicality requirement generally prevents plaintiffs from bringing a class action against defendants with whom they have not had any dealings. *Murer*, 257 Mont. at 438, 849 P.2d at 1038. Typicality is met if the named plaintiff's claim " 'stems from the same *event, practice,* or *course of conduct* that forms the basis of the class claims and is based upon the same legal or remedial theory.' " *McDonald*, 261 Mont. at 402, 862 P.2d at 1156 (quoting *Jordan*, 669 F.2d at 1321). The event, practice, or course of conduct need not be identical. *Polich*, 116 F.R.D. at 262. Similar to the test for commonality, the typicality requirement is not demanding. *See Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997).

¶36 The District Court determined Diaz and Hoffmann-Bernhardt failed to establish typicality because the made-whole determination would have to be made on an individual basis. As discussed under the commonality requirement, the State's practice of employing its exclusion to third-party liability coverage constitutes an event, practice, or

15

course of conduct that Diaz and Hoffmann-Bernhardt share with the class, thereby satisfying the typicality element.

¶37 In addition, the State and the TPAs argue the typicality element is not met because Diaz and Hoffmann-Bernhardt do not have claims against all of the named defendants, yet they have elected to sue multiple defendants who operate under distinct types of health plans. Our decision in Issue One, however, has rendered this argument moot, as Diaz and Hoffmann-Bernhardt's claims are restricted to the State only and, therefore, are not against defendants with whom they are not insured. Therefore, the typicality element is present.

*Adequate Representation*

¶38 The fourth requirement under Rule 23(a) allows certification only where the representative parties will fairly and adequately protect the interests of the class. M. R. Civ. P. 23(a)(4). This element requires that the named representative's attorney be qualified and competent and able to conduct the litigation and " 'that the named representative's interests not be antagonistic to the interests of the class.' " *McDonald*, 261 Mont. at 403, 862 P.2d at 1156 (quoting *Jordan*, 669 F.2d at 1323).

¶39 The State and the TPAs do not challenge the competency of Diaz and Hoffmann-Bernhardt's attorneys. Instead, they reiterate their typicality argument concerning the named plaintiffs not having claims against all defendants. Because we resolved this question in our discussion of the typicality element, we conclude Diaz and Hoffmann-Bernhardt would fairly and adequately protect the interests of the class.

**2. Rule 23(b)**

¶40     Having determined that Diaz and Hoffmann-Bernhardt have sufficiently established the Rule 23(a) requirements, we now turn to Rule 23(b), which provides in relevant part:

> (b) Types of Class Actions.  A class action may be maintained if Rule 23(a) is satisfied and if:
>
> . . .
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to the findings include:
>
>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>>
>> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>>
>> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>>
>> (D) the likely difficulties in managing a class action.

M. R. Civ. P. 23(b)(2)-(3).

¶41     Diaz and Hoffmann-Bernhardt sought class certification under Rule 23(b)(2) or, in the alternative, Rule 23(b)(3).  The District Court concluded certification was precluded under Rule 23(b)(2) because whether the State can exercise its exclusion to require tortfeasors' insurers to pay first, thereby lowering the amount the State pays its insureds, is a question that requires individualized made-whole assessments as to each insured.  The District Court further determined Rule 23(b)(3)'s predominance and superiority

17

requirements were not satisfied, as individualized issues of proof predominated over common issues, and potential class members may be better off bringing individual claims.

*Rule 23(b)(2)*

¶42 The United States Supreme Court recently ruled that F. R. Civ. P. 23(b)(2) does not authorize class certification when each class member would be entitled to an individualized award of monetary damages, or when each class member would be entitled to a *different* injunction or declaratory judgment against the defendant. *Wal-mart Stores, Inc. v. Dukes*, ___ U.S. ___, 131 S. Ct. 2541, 2557 (2011). "The key to the [Rule 23](b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-mart Stores, Inc.*, ___ U.S. at ___, 131 S. Ct. at 2557 (internal quotation omitted).

¶43 Diaz and Hoffmann-Bernhardt argue the class is certifiable under Rule 23(b)(2) because a single question affects all class members: Can the State, in compliance with the subrogation laws, programmatically exercise its exclusion before conducting a made-whole analysis? Diaz and Hoffmann-Bernhardt rely upon *Ferguson*, where this Court concluded Rule 23(b)(2) certification was appropriate, claiming the District Court committed the same errors here in denying Rule 23(b)(2) certification as the district court in *Ferguson*. We agree.

¶44 There, Ferguson's insurer subrogated against a third-party tortfeasor's insurance carrier, recovering some of the amounts it had paid Ferguson for property damages

18

incurred in an automobile crash. Ferguson sued, claiming her insurer did not conduct a made-whole analysis before it subrogated against her recovery. *Ferguson*, ¶¶ 4-5. In her motion for class certification, Ferguson requested declaratory relief that her insurer breached its insurance contract by failing to conduct a made-whole analysis before it subrogated against her recovery. Assuming she succeeded in her declaratory action, Ferguson sought an injunction requiring the insurer to return to her any amounts it had illegally subrogated until it completed the requisite made-whole adjustments. *Ferguson*, ¶ 33. The district court denied class certification, reasoning the action would require factual determinations regarding made-whole entitlements and, thus, was not suitable for a class action. *Ferguson*, ¶¶ 12-14. We reversed the district court, noting fact-specific determinations were outside the context of the declaratory and injunctive relief Ferguson sought, as Ferguson only requested that amounts unlawfully withheld from the class members be returned until the insurer conducted a made-whole analysis. *Ferguson*, ¶¶ 33-37.

¶45 The District Court distinguished the present case from *Ferguson* on its facts. The District Court determined that unlike in *Ferguson*, where the insurer's programmatic exercise of its subrogation rights was the primary issue, this case required individualized made-whole determinations as to each class member.

¶46 In determining whether to certify a class, "a district [court] should not assess any aspect of the merits unrelated to a Rule 23 requirement." *Mattson v. Mont. Power Co.*, 2009 MT 286, ¶ 67, 352 Mont. 212, 215 P.3d 675 (internal quotation omitted). " '[T]he question is not whether the plaintiff or plaintiffs have stated a cause of action or will

19

prevail on the merits, but rather whether the requirements of Rule 23 are met.' " *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S. Ct. 2140, 2153 (1974) (quoting *Miller v. Mackey Intl., Inc.*, 452 F.2d 424, 427 (5th Cir. 1971)). The District Court, in determining that individualized made-whole determinations were necessary here, erroneously delved into the merits of Diaz and Hoffmann-Bernhardt's claim. In doing so, the District Court failed to recognize that there is no prerequisite for individualized, fact-specific determinations. The primary issue is whether the State's act of exercising its exclusion before conducting a made-whole analysis violates Montana's subrogation laws.

¶47 Like *Ferguson*, Diaz and Hoffmann-Bernhardt seek to enjoin an insurer—the State—from exercising its exclusion before it conducts a made-whole analysis. *See Ferguson*, ¶¶ 33-37. The declaratory relief sought here is whether Montana's made-whole laws are being violated by the State's act of accepting reimbursements from medical providers who have received payments from third-party insurers and/or act of refraining from paying medical bills that third-party insurers have already paid. "The challenge here is not to an error in [the State's] application of the [made-whole] rule *to any given insured*. Rather, this case challenges the procedures of a program . . . [the] class claims seek a declaratory ruling . . . to compel [the State] to follow the legal standard in its subrogation program." *See Ferguson*, ¶ 34.

¶48 As contemplated by Rule 23(b)(2), there is a common question presented for declaratory and injunctive relief, to which a single answer will affect all class members: Can the State, in compliance with §§ 2-18-901 to -902, MCA, withhold payment of medical expenses or accept reimbursement of medical expenses paid by a third-party's

20

insurer before it conducts a made-whole analysis? Any individualized determinations regarding whether class members have been made whole will not occur in the context of this class action claim.

*Rule 23(b)(3)*

¶49 Because we have concluded the class is certifiable under Rule 23(b)(2), we need not address the parties' arguments regarding Rule 23(b)(3).

## CONCLUSION

¶50 BCBS and New West, as TPAs in this case, are not subject to the made-whole laws as "insurers" under §§ 2-18-901 to -902, MCA, or under a third-party beneficiary theory. The District Court abused its discretion in denying class certification, as Diaz and Hoffmann-Bernhardt have demonstrated the Rule 23 requirements are met.

¶51 We affirm in part and reverse in part and remand this matter to the District Court for further proceedings consistent with this Opinion.

/S/ MICHAEL E WHEAT

We concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS

Justice Beth Baker, concurring.

¶52 I do not join the Court's opinion today because I do not agree with all of its discussion and rationale. I do concur, however, that, under the terms of their contracts with the State of Montana, the third-party administrators in this case are not "insurers" for purposes of Montana's made-whole laws and should be dismissed from the action. In light of the Court's resolution of that issue, I agree a class properly may be certified under M. R. Civ. P. 23(b)(2) to address the narrow issue of declaratory relief to determine whether the State's health care benefit plan is subject to the same subrogation and made-whole analyses that apply to private insurers and, if so, whether the State may exclude coverage for medical expenses paid by a third-party's insurer without first conducting a made-whole analysis of a claim made under the State plan.

¶53 The relief sought by the Plaintiffs in their initial complaint and in their proposed amended complaint, which had not been filed at the time appeal was taken, goes beyond that narrow issue, requesting individual calculation of benefits alleged to have been wrongfully withheld, determination and payment of interest for delayed payments, and damage claims for constructive fraud and deceit, breach of the insurance contract, bad faith, and an award of punitive damages. As noted by the Court, following completion of the initial briefing in this appeal, the United States Supreme Court ruled in *Wal-Mart Stores, Inc. v. Dukes* that class certification under Fed. R. Civ. P. 23 was not proper in a case involving individual employment discrimination claims by some 1.5 million class members. In reversing the class certification order, the Court in part concluded that employees' claims for backpay were improperly certified under F. R. Civ. P. 23(b)(2).

22

131 S. Ct. at 2557. Given the need for individualized determination of each class member's eligibility for backpay, the Supreme Court did not decide whether there are any forms of "incidental" monetary relief that are consistent with its interpretation of Rule 23(b)(2) because the employees could not satisfy even the "incidental monetary relief" standard. *Wal-Mart*, 131 S. Ct. at 2560. Likewise, given our disposition of Issue 1, we need not decide in this case whether individualized claims for bad faith, punitive or other monetary damage awards would preclude class certification.

¶54 The question whether a person covered by the State's health benefit plan must be made whole prior to the State subrogating against her recovery or refusing to pay medical expenses for injuries caused by a third party is a question that may be answered, applicable to the entire class, without an individualized made-whole determination of each class member. Whether the State Plan's Coordination of Benefits provision breaches a duty to reimburse an insured for all losses before the State's right of subrogation may be exercised is a common issue because that alleged duty, if it exists, is a duty owed to all class members. As in *Ferguson*, the plaintiffs challenge what they allege is "a program of subrogation which systematically deprives all class members of any consideration of their 'made-whole' rights." *Ferguson*, ¶ 34.

¶55 The Plaintiffs did not cite in either their initial or proposed amended complaints §§ 2-18-901 and 2-18-902, MCA, the statutes on which the Court relies in characterizing the State as "the insurer" for subrogation purposes. Opinion, ¶ 17. The central issue in this case, on which the District Court has not yet ruled, is whether the State is subject to the same rule as a private insurer, or whether a legislatively-promulgated health benefit

23

plan is subject to a different subrogation analysis. As the District Court observed, "[a] legal question exists as to whether the State employee benefit plan . . . can require the tortfeasor's insurer to pay first thereby lowering the amount the State [is] required to pay in benefits." Resolution of that question is not needed for today's determination that the TPAs do not act as "insurers" for purposes of the subrogation laws in administering the State's health care benefit plan. As the Court rightly concludes, however, it is a question that may be answered without analysis of any individual insured's amount of loss or recovery. In this regard, the claim for class relief here is indistinguishable from that made in *Ferguson*. To the extent the class includes members whose right to recover is time-barred, whose claims were released by settlement, or whose recovery is otherwise subject to dispute, affirmative defenses may apply against any individual claims for relief, but do not defeat the propriety of certification as to the declaratory relief sought for the class as a whole.

¶56 Because the case is being remanded and the claims against the TPAs will be dismissed, the parties and the District Court will have the opportunity to review the remaining claims in light of our ruling today and to consider the *Wal-Mart* decision in fashioning the scope of the issues to be decided in the context of the class action.

/S/ BETH BAKER

24

Justice Jim Rice, dissenting.

¶57 I believe the Court has become so lost in the forest that it cannot see the controlling legal principles for all the trees. To remedy its predicament, the Court has re-pled the case, reversing the District Court on a case that was never before that court.

¶58 To begin, it is important to mention the Court's errors of omission. It appears the Court is holding, without explanation, that the State will be required, first, to refund in a lump sum all monies that Plaintiffs claim have been wrongfully withheld in violation of the made whole doctrine and then seek to re-obtain funds lawfully withheld by filing a later action for subrogation. This is implicit within the rationale on which the Court rejects the District Court's determination that individualized assessments will be necessary: "Any individualized determinations regarding whether class members have been made whole *will not occur in the context of this class action claim*." Opinion, ¶ 48. (Emphasis added.) Obviously, then, those determinations will need to be made in a later action. This directive may well come as a surprise to both sides: as discussed further herein, "individualized assessments" are the core of Plaintiffs' entire suit as pled, and no party has requested or understood that this lawsuit could end by the payment of a lump sum by the State, followed by the filing of separate subrogation claims. Further, as a practical matter, calculation of a lump sum without individualized assessments would be nigh impossible. As noted herein, the State has not even received notice on all the potential claims. However, without further explanation, the Court simply leaves the case hanging in this posture. That leads to the Court's next omission.

25

¶59    The apparent basis for the Court's action here is the hidden holding that, in its role of providing a healthcare plan, the State is an insurer.  I describe the holding as "hidden" because it is decided within a discussion that is purported to be about application of the made whole doctrine to TPAs.  However, the Court's holding sweeps beyond the stated issue, leaping to the additional conclusion that "the factual circumstances present here . . . clearly establish that the State is the insurer, not the TPAs."  Opinion, ¶ 17.  In doing so, the Court does not so much as mention the State's arguments to the contrary, such as its contention and analysis that, for the same reasons we concluded the Uninsured Employers Fund was not an insurer in *Thayer v. Uninsured Employers' Fund*, 1999 MT 304, 297 Mont. 179, 991 P.2d 447, neither is it an insurer.  *See* Appellee St. of Mont.'s Ans. Br., p. 42 (June 10, 2010) ("the problem with Plaintiffs' case is they seek to apply a doctrine which evolved in the context of 'for profit' insurance under Title 33 to benefit programs subsidized by The [sic] State for its employees and State-subsidized health care benefits for those who are unable to obtain health coverage through more traditional channels.  The rationale which applied to the creation of the 'made whole doctrine' in for profit insurance claims simply does not apply in this other context.").  This was the issue we carefully considered in determining the status of the State's CHIP program in *Shattuck v. Kalispell Reg'l Med. Ctr.*, 2011 MT 229, 362 Mont. 100, 261 P.3d 1021, but the Court gives no consideration whatsoever to this question today in declaring the State to be an insurer.  The Court's decision appears to be based on the presupposition that "someone has got to be an insurer here," and if the TPAs are not, then the State is.

26

¶60     Perhaps it is easy to forget the parties' arguments, as they were made so long ago. The appeal from the District Court's order on class certification was filed two years ago, and the briefs containing these arguments followed thereafter, beginning in April 2010. After briefing, the Court remanded this matter, directing the District Court to address a merits issue—the "made whole" doctrine—before returning the case here, followed by more briefing and oral argument.[1]  Forgetfulness arising from the long course of this case may have contributed to the Court's determination to re-make the case into something completely different from what was originally pled.  It appears the Court has transformed the case to make it similar to *Ferguson*.

¶61     The Court offers that "Diaz and Hoffmann-Bernhardt argue the class is certifiable under Rule 23(b)(2) because a single question affects all class members:  Can the State, in compliance with the subrogation laws, programmatically exercise its exclusion before conducting a made-whole analysis?"  Opinion, ¶ 43.  However, this is not, and never has been, the claim of the Plaintiffs.  The Plaintiffs' pleadings do not challenge the State's internal mechanism for applying the made whole doctrine.  Rather, it is the Plaintiffs' claim, repeatedly stated, that the State has "illegally withheld" benefits, should be made to calculate the amount withheld for "each member of the class," should "immediately pay" such benefits plus interest, and should pay punitive damages.  Compl., pp. 15-16 (Oct. 23, 2008); Proposed Amend. Compl., pp. 17-18 (n.d.).  In detail, the Complaint and Proposed Amended Complaint explain as follows:

---

[1] After directing the District Court to undertake consideration of a merits issue on remand, the Court now criticizes the District Court for considering the merits.  *See* Opinion, ¶ 46.

27

The [State],[2] therefore, ha[s] no right to exclude or refuse to pay benefits for medical costs under these circumstances . . . . [T]he plaintiffs and the class they represent are requesting a declaratory judgment that the [State's] withholding of benefits violates the "made whole" law. They request an injunction or other appropriate orders *requiring the* [*State*] *to calculate the amounts they have unlawfully withheld* and to pay those amounts to the plaintiffs. They also request injunctive relief prohibiting the defendants from continuing to violate the "made whole" laws. They request all other *damages* allowed by Montana law, including their costs and attorney fees.

*See* Compl., pp. 4-5; Proposed Amend. Compl. 4-5 (emphasis added). The Plaintiffs further explain that their "main issue" is whether the State has deprived them of benefits. They request injunctive relief "which will compel the defendants to calculate the amount unlawfully withheld from each individual member of the class and then to *pay that amount to the individual members of the class*." Compl., p. 12; Proposed Amended Complaint, p. 12 (emphasis added). "The remedy requested does not present an onerous task, since it will be *the defendants' obligation to determine the full extent of reimbursement due to each member of the class*." Compl., p. 12; Proposed Amend. Compl., p. 12 (emphasis added).

¶62 Yet, apparently to re-cast this case to be like *Ferguson*, the Court offers the new proposition that individualized determinations "will not occur in the context of this class action claim." Opinion, ¶ 48. In *Ferguson*, the action filed "d[id] not seek to adjudicate any individual 'made-whole' entitlements," and we reversed the determination made by the District Court based on its belief that such entitlements were required. *Ferguson v. Safeco Ins. Co. of Am.*, 2008 MT 109, ¶¶ 8, 39, 42, 342 Mont. 380, 180 P.3d 1164.

[2] Originally, the Complaint and Proposed Amended Complaint stated claims against all the named Defendants. Because the TPAs are being removed, Opinion, ¶ 24, the State is now the only remaining Defendant. However, the claims as pled remain the same.

However, Plaintiffs' case here was simply pled differently than in *Ferguson*. Further, *Ferguson* involved definite claims. Safeco had already pursued and obtained subrogation recoveries in each claimant's case, making claim identification very efficient. *Ferguson*, ¶¶ 4-7. Here, subrogation "actions" or "recoveries" by the State have not likewise occurred in each claim. Indeed, the District Court found that the State did "not always receive notice that an accident has occurred." Or. RE: Class Action Request, p. 4 (Dec. 16, 2009). The failure to pay benefits may have occurred because a medical provider failed to bill the State, having already been paid by the tortfeasor's insurer. In other cases, the State simply received an unsolicited reimbursement. Far from "programmatically exercis[ing] its exclusion before conducting a made-whole analysis," Opinion ¶ 43, the State may not have even known it applied an exclusion or failed to make payment, making it far from *Ferguson* as well.

¶63    Then, completing the transformation of this case to *Ferguson*, the Court redrafts the class definition to something different from the one considered by the District Court. *Compare* Opinion, ¶ 28, *with* the District Court's Order RE: Class Action Request, p. 6. The Court now defines the class as insureds "who have not been made whole for their damages because the State and the TPAs have programmatically failed to pay benefits for their medical costs." The Court does not explain how insureds "who have not been made whole" can become class members without individualized assessments, which the Court holds will not be made in this case. After re-making the case, the Court then perfunctorily performs an assessment of Rule 23 factors to the new case, never reviewing

29

those issues as they were presented to the District Court within the case that was actually brought. Thus, the Rule 23 assessment at that juncture is little more than pretense.

¶64 Finally, the Court overlooks the standard of review and its purposes. The ultimate question is whether the District Court abused its very broad discretion in determining that the putative class as pled in plaintiffs' complaint did not meet the criteria set forth in M. R. Civ. P. 23:

> Trial courts have *the broadest discretion* when deciding whether to certify a class. The judgment of the trial court should be accorded the greatest respect because it is in the best position to consider the most fair and efficient procedure for conducting any given litigation. Therefore, this Court will not disturb a trial court's ruling on a motion to certify, unless there is an abuse of discretion.

*Sieglock v. Burlington N. Ry. Co.*, 2003 MT 355, ¶ 8, 319 Mont. 8, 81 P.3d 495 (citation omitted) (emphasis added). The standard of review reflects abundant common sense: that in class certification questions, appellate courts should defer to district courts, which are tasked with shepherding proposed class cases through the trial process. Here, the District Court well analyzed the case that was actually before it and did not abuse its discretion. It did not seek to remake the case, and neither should this Court.

¶65 Had we affirmed the District Court initially, instead of remanding, this case could have been re-plead or re-filed to address the class problems the District Court properly identified. I dissented from our failure to do so then, and I dissent from the Court's action today. I would affirm.

/S/ JIM RICE