DA 10-0541

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2011 MT 178

JOSHUA MICONE,

      Petitioner and Appellant,

  v.

DEPARTMENT OF PUBLIC HEALTH
AND HUMAN SERVICES,

      Respondent and Appellee.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV 09-625(A)
Honorable Ted O. Lympus, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

         Shelly F. Brander, Kaufman, Vidal & Hileman, P.C., Kalispell, Montana

      For Appellee:

         Barbara B. Hoffmann, Department of Public Health and Human Services,
Helena, Montana

Submitted on Briefs:   May 25, 2011

Decided:   July 29, 2011

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1      Joshua Micone (Joshua) appeals from an order of the Eleventh Judicial District Court, Flathead County, affirming the Department of Public Health and Human Services' (Department) determination that Joshua repay Medicaid benefits received between 2003 and 2006.

¶2      Joshua raises two issues on appeal:

¶3      Issue One:  Did the District Court err in determining that the Hearing Officer did not violate § 2-4-623(a), MCA, when he did not issue a decision within ninety days after the case was deemed submitted?

¶4      Issue Two:  Did the District Court correctly determine that substantial credible evidence supported the Department's finding that Jennifer Micone's (Jennifer) interest in Jump Investments was an available resource?

## BACKGROUND

¶5      In January 2003, Joshua applied for Medicaid benefits for himself and his family by completing a form that requires applicants to list all property which the applicant and/or a member of the applicant's household owns.  Joshua did not report Jennifer's interest in Jump Investments, a family limited partnership, on the initial application or any subsequent applications.  Unaware of Jennifer's interest in Jump Investments,[1] the Department approved Joshua's application for Medicaid benefits.

---

[1] Jennifer had been a limited partner in Jump Investments since the mid 1990's.

2

¶6    The Micone family received Medicaid benefits, totaling $22,657.32, from January 2003 through May 2006. In June 2006, the Department notified Joshua that his household was ineligible for Medicaid benefits paid over the past three years because Jennifer's interest in Jump Investments exceeded the available resource limit to qualify for Family Medicaid. The Department demanded that Joshua repay the $22,657.32 in benefits paid.

¶7    Joshua contested the demand for repayment. A Hearing Officer from the Board of Public Assistance of the State of Montana (Board) conducted a hearing in March 2008. The Hearing Officer issued his decision in February 2009, finding that Jennifer's interest in Jump Investments was a countable and available resource. Joshua appealed and the Board upheld[2] the Hearing Officer's findings in April 2009. Joshua petitioned for judicial review, and the District Court affirmed the Board in September 2010.

¶8    Joshua appeals.

## STANDARD OF REVIEW

¶9    Actions brought before the Board are subject to the Montana Administrative Procedure Act (MAPA), Title 2, chapter 4, MCA. The applicable standard of review is set forth in § 2-4-704(2), MCA:

> The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because: (a) the administrative findings, inferences, conclusions,

---

[2] The parties dispute whether the Hearing Officer issued a decision or a proposal for decision and whether, subsequently, the Board affirmed the Hearing Officer or adopted the Hearing Officer's proposal. This dispute forms the basis of Issue One.

or decisions are:  (i) in violation of constitutional or statutory provisions . . . (v) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. . . .

¶10    We review findings of fact for clear error and conclusions of law for correctness.  *In re Hofer*, 2005 MT 302, ¶¶ 13-14, 329 Mont. 368, 124 P.3d 1098.  A finding is clearly erroneous if it is not supported by substantial evidence; if substantial evidence supports it, but the tribunal misapprehended the effect of the evidence; or if, after reviewing the record, this Court is left with the definite and firm conviction that a mistake has been committed. *Id.* at ¶ 13.  The above standard applies to both the district court's review of the administrative decision and this Court's subsequent review of the district court decision.  *Id.* at ¶ 14.

**DISCUSSION**

¶11    *Issue One:  Did the District Court err in determining that the Hearing Officer did not violate § 2-4-623(a), MCA, when he did not issue a decision within ninety days after the case was deemed submitted?*

¶12    The role of the judge in statutory interpretation "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted."  Section 1-2-101, MCA.  If the plain language of the statute is clear and unambiguous, no further interpretation is required.  *Miller v. Eighteenth Jud. Dist. Ct.*, 2007 MT 149, ¶ 38, 337 Mont. 488, 162 P.3d 121.  "Where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all."  Section 1-2-101, MCA.  Section 2-4-623, MCA, provides that "a final decision must be issued within 90 days after a contested case is considered to be submitted for a final decision

4

unless, for good cause shown, the period is extended for an additional time not to exceed 30 days."

¶13    The parties do not dispute the timeline of events. The Hearing Officer held a contested hearing on March 12, 2008. Following the hearing, the Hearing Officer issued an amended briefing schedule, requiring that the parties submit initial briefs on or before April 18, 2008, and response briefs on or before May 2, 2008. Micone filed his response brief on May 2, 2008. The Hearing Officer did not issue a decision until nine months later on February 3, 2009. The Board heard oral argument from the parties on March 19, 2009, and issued its decision on April 6, 2009, eighteen days after oral argument.

¶14    In District Court, Micone argued that the Hearing Officer's decision was void because, in violation of § 2-4-623, MCA, he did not issue the decision within ninety days after the case was considered submitted. The Department conceded that the Hearing Officer did not comply with § 2-4-623, MCA, but argued that the District Court could not reverse unless Micone's substantial rights had been prejudiced as a result of the delay. The District Court determined the parties had incorrectly interpreted what constitutes a "final decision" under § 2-4-623, MCA. Specifically, the District Court concluded that pursuant to § 2-4-621, MCA, the Hearing Officer's decision constituted a "proposal for decision," which was not subject to § 2-4-623, MCA. Further, the District Court concluded the Board's adoption of the Hearing Officer's "proposal for decision" constituted the "final decision" for purposes of § 2-4-623, MCA. The District Court affirmed the Board because it had issued its order

5

adopting the Hearing Officer's proposal within ninety days after the matter was deemed submitted.

¶15 On appeal, Micone asserts that the Hearing Officer's decision is the "final decision" because the Board's order did not include findings of fact and conclusions of law, as required by § 2-4-623, MCA, and both the Board and Hearing Officer utilized terminology treating the Hearing Officer's decision as the "final decision." Further, Micone alleges the District Court exceeded the scope of judicial review by upholding the Board's decision on different grounds than that advocated by the Department.

¶16 When a majority of the agency officials who are responsible for rendering the final decision in a contested case have not heard the case, the decision, if it is adverse to a party other than the agency, may not be issued until the parties have received a "proposal for decision" and have been given an opportunity to file exceptions and present briefs and oral argument to the decision-rendering agency officials. Sections 2-4-621(1) and (3), MCA. The "proposal for decision" becomes the "final decision" unless, within fifteen days of the hearing officer's mailing the "proposal for decision" to the parties, the Board receives a request for review. Admin. R. M. 37.5.331(7)-(8) (2007). When the Board receives a timely request for review, it is considered the "agency" under § 2-4-621, MCA, who renders the "final decision." Admin. R. M. 37.5.331(4)(c) (2007).

¶17 Micone's argument that the Board's decision is not the final decision because it does not contain findings of fact and conclusions of law, as required by § 2-4-623(1)(a), MCA, is unpersuasive because § 2-4-621(3), MCA, provides that the Board may adopt the "proposal

6

for decision" as its final order. The Board did exactly this, as evinced in its order: "Having considered the record in this case, the [Board] hereby unanimously affirms the decision the Hearing Officer rendered on February 3, 2009." Further, the terminology used by the parties does not dictate that the Hearing Officer's decision is the "final decision." Although the Board did "affirm," rather than "adopt" the Hearing Officer's decision, the use of incorrect terminology does not alter the plain meaning of §§ 2-4-621 and -623, MCA, which, as applied here, require that the Board's decision constitute the "final decision."

¶18    In support of his argument that the District Court exceeded the scope of judicial review, Micone cites *Hilands Golf Club v. Ashmore*, which holds that, pursuant to § 2-4-702(1)(b), MCA, a party generally cannot raise an issue for the first time on appeal unless good cause is shown. *Hilands Golf Club v. Ashmore*, 2002 MT 8, ¶ 21, 308 Mont. 111, 39 P.3d 697. This rule has no application here. Micone challenged the timeliness of the Hearing Officer's order before the Board. Thus, the District Court was not considering a new issue raised for the first time on appeal, but, rather, based its decision upon different grounds than that advocated by the Department. The District Court did not exceed the scope of judicial review. We conclude the District Court correctly concluded that the time requirement imposed by § 2-4-623, MCA, was not violated in this case.

¶19    *Issue Two: Did the District Court correctly determine that substantial credible evidence supported the Department's finding that Jennifer's interest in Jump Investments was an available resource?*

¶20     Only resources that are "available" and "countable" are considered in determining Medicaid eligibility. *Hofer*, ¶ 5. Here, both the Hearing Officer and District Court relied upon the Family Medicaid Manual in concluding that Jennifer's share was an available resource. The manual provides that a resource is available when it is actually available to the individual or the individual has a legal or equitable interest in the property or asset and has the legal or equitable ability to access funds or to convert non-cash property into cash, regardless of whether the individual has the practical ability to do so.

¶21     Jennifer's grandparents, John and Darlene, established Jump Investments, a limited family partnership, in 1994, with the purpose of establishing an estate planning tool for themselves and providing an educational fund for their children and grandchildren. The Certificate and Articles of Limited Partnership provide, in relevant part:

> [A] Limited Partner *may at any time sell, transfer, or assign its Limited Partnership interest*; provided, however, that each of the remaining Limited Partners shall have a right of first refusal to purchase a proportionate share of said Limited Partnership interest on the same terms offered by the Limited Partner disposing of his interest. . . . This Limited Partnership is formed by a closely-held group who know and trust one another . . . . The limited Partnership interest have not, nor will be registered or qualified under federal or state securities laws. The Limited Partnership interest may not be offered for sale, sold, pledged or otherwise transferred unless so registered or qualified, or unless an exemption from registration or qualification exists.

(Emphasis added.)

¶22     Jump Investments' net assets for 2003 to 2006 were approximately $411,000 in 2003; $391,000 in 2004; $418,000 in 2005; and $428,000 in 2006. Jennifer, as one of the twelve limited partners, is entitled to an 8.1666% share of the partnership's total value. Jennifer has

8

never offered to sell her share to other members of the partnership, and it is unknown whether any member of the partnership would have any interest or resources to purchase her share. The cost of registering or qualifying Jennifer's share according to federal and state securities laws is undetermined.

¶23 At the contested hearing, Tammy Harmon (Harmon), a representative from the Flathead County Office of Public Assistance, testified that Jennifer's interest in Jump Investments constituted an available resource, which exceeded the then $3,000 resource limit, because it was saleable and worth more than $3,000. The Office of Public Assistance determined Jennifer's share was worth $9,799.92 by taking approximately half of the net value of Jump Investments ($200,000) and multiplying it by Jennifer's interest in the partnership (8.1666%) and discounting that amount in order to account for Jennifer's lack of control over the partnership (40%).[3] Ken Kettinger (Kettinger), Jump Investments' accountant, testified that Jennifer's share is saleable, but has a market value of zero; however, Kettinger could not determine whether the Department's valuation was "a good or bad number." The Hearing Officer found that the Department reasonably valued Jennifer's share and "likely erred, but only on the side of caution." The Hearing Officer noted that although Kettinger opined that Jennifer's share has a market value of zero, Kettinger admittedly has no experience or expertise in determining the value of a share like Jennifer's.

---

[3] The IRS allows discounts of 20% to 40% for minority interests.

9

¶24 On appeal, Micone asserts the District Court and Hearing Officer erroneously relied upon the Department's Family Medicaid Manual in valuing Jennifer's interest because her interest is not available due to insurmountable financial hurdles that prevent her from marketing it. In addition, Micone argues no evidence exists supporting the Department's use of the 40% discount or $200,000 net worth in valuing Jennifer's interest.

¶25 This Court has recognized that the Department's Medicaid Manual is adopted and incorporated by reference in Admin. R. M. 37.82.101. Accordingly, provisions of the Medicaid Manual have the force of law. *See Timm v. Mont. Dept. of Health & Human Services*, 2008 MT 126, ¶¶ 34-36, 343 Mont. 11, 184 P.3d 994; *see also Grover v. Cornerstone Constr. N.W., Inc.*, 2004 MT 148, ¶ 13, 321 Mont. 477, 91 P.3d 1278 ("A code or standard . . . must have been adopted by a governmental agency so as to have the force of law . . . ."). The Hearing Officer and District Court did not err in utilizing the Family Medicaid Manual in evaluating whether Jennifer's interest constituted an available resource.

¶26 Further, substantial credible evidence exists, which supports the Hearing Officer's findings that Jennifer's interest has a fair market value in excess of $3,000. The Hearing Officer considered testimony from Harmon and Kettinger regarding the value of Jennifer's interest and adopted Harmon's valuation, which was based upon a discount employed by the IRS and a conservative estimate of Jump Investments' net worth. As the District Court noted, § 2-4-704(2), MCA, prohibits a court from substituting its judgment for that of the agency as to the weight of the evidence on questions of fact. *McDonald v. Dept. of Envtl.*

10

*Quality*, 2009 MT 209, ¶ 38, 351 Mont. 243, 214 P.3d 749. Micone has not presented any evidence, at the hearing or otherwise, indicating the Department's valuation method was clearly erroneous. This Court will not substitute its judgment for that of the Hearing Officer's as to the weight of witness testimony. We conclude the District Court did not err in determining that the Hearing Officer's findings were not clearly erroneous.

**CONCLUSION**

¶27    For the foregoing reasons, we affirm.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ BRIAN MORRIS
/S/ JIM RICE


Justice Patricia O. Cotter dissents.

¶28    I dissent. I would conclude that the final decision of the Board was untimely. I would therefore reverse the decision of the District Court and remand with instructions to vacate and dismiss as void the untimely decision. Because I would do so, I would not reach Issue Two.

¶29    Section 2-4-623(1)(a), MCA, provides in pertinent part: "a final decision must be issued within 90 days after a contested case is considered to be submitted for a final decision unless, for good cause shown, the period is extended for an additional time not to exceed 30 days." As the Court notes at ¶ 13, the timeline is not in dispute. A contested case hearing

11

was held on March 12, 2008. The Hearing Officer then asked for briefs from the parties, the final of which was filed on May 2, 2008. At this point, with all the evidence and arguments having been presented, I maintain the case must be deemed submitted. The decision of the Hearing Officer was entered on February 3, 2009, 276 days later. What the Court in its Opinion deems the "final decision" of the Board was entered on April 6, 2009, 339 days after the case was submitted. Regardless of whether the Hearing Officer's decision of February 3 or the Board's decision of April 6 is considered the "final" decision, it was clearly issued more than 90 days after the contested case was submitted, and is therefore untimely.

¶30    Without saying so expressly, the Court has impliedly ruled that the 90-day limitation set forth in § 2-4-623, MCA, did not commence to run until after the Board heard oral arguments. (The Board's decision was issued "eighteen days after oral argument" (¶ 13); the Board "issued its order adopting the Hearing Officer's proposal within ninety days after the matter was deemed submitted" (¶ 14).). In other words, we do not deem a matter "submitted for a final decision" until the hearing officer's decision is reviewed by the officials of the agency who are to render the final decision—here, the Board of Public Assistance. Respectfully, this cannot be what MAPA intends. If this be the rule, then a hearing officer can sit on a case for 276 days, as here—or 776 days for that matter—and no timeframes will even commence to run until the hearing officer's decision is in the hands of agency officials for final decision.

¶31    The question of when a case is deemed "submitted for a final decision" was raised recently in Knowles v. State ex rel. Lindeen, 2009 MT 415, 353 Mont. 507, 222 P.3d 595.

12

The petitioner in that case argued that the decision of the Commissioner of Securities and Insurance was untimely under § 2-4-623(1)(a), MCA, because it was issued well beyond the 90-day timeframe. As I posit here, Knowles argued that his case was "submitted for a final decision" once the parties submitted their post-hearing briefs to the Hearing Examiner, and that a decision by the Commissioner rendered more than 90 days after this date was untimely and therefore void. We did not reach the merits of his argument, however, because the contested case at issue was submitted for hearing before the 90-day requirement was adopted and enacted into law in 2005 with the passage of SB 260. Knowles, ¶ 27.

¶32 The legislative history of SB 260 reveals that there was substantive debate about the introduction of the 90-day limitation. The sponsor of the bill, Senator Gary Perry, first proposed language providing: "[a] final decision must be issued within 90 days after a contested case hearing unless, for good cause shown, the period is extended for an additional time not to exceed 90 days." Mont. S. 260.02, 59th Legis., 2005 Reg. Sess. 1 (Jan. 20, 2005). However, on April 15, 2005, Governor Schweitzer proposed several amendments to SB 260. His letter proposing amendments provides in pertinent part:

> Under my amendments, a written decision must be issued within 90 days after a contested case is deemed submitted for decision to the final decision maker. As the bill stands in its current form, the 90 day period begins to run from the time of the close of the contested case hearing. Because many procedural steps – such as the filing of exceptions and subsequent oral argument – may occur after the close of the hearing, and because scheduling difficulties at times prolong the completion of these steps, it is more realistic to require that the clock for issuance of the written decision begin to run after the case is deemed submitted, rather than at the close of the hearing.

Subsequently, Greg Petesch of Legislative Services proposed inserting language to the effect

13

that a final decision must be issued within 90 days after a case "is considered submitted for decision to the final decisionmaker"; however, this language was not adopted. Rather, SB 260, as enacted, requires that a final decision must be issued "within 90 days after a contested case is considered to be submitted for a final decision."

¶33     Thus, while the legislative history sheds some light on the contours of the debate and provides historical context, SB 260 as ultimately adopted does not clarify at what point "a contested case is considered to be submitted for a final decision." Is it after the contested case hearing, after all post-hearing briefs and arguments have been completed and submitted to the hearing officer, or is it only after the full agency receives the decision of the hearing officer? Section 1-2-102, MCA, instructs that, in construing a statute, "the intention of the legislature is to be pursued if possible." I submit that the intent of the Legislature with respect to when the 90-day timeframe commences remains unclear. This being so, we must construe the statute "with a view to effect [its] objects and to promote justice." Section 1-2-103, MCA.

¶34     Justice is not served when the time for a decision in administrative matters is completely open-ended. If the timeframe does not commence until after officials making the final decision receive the decision of the hearing officer, then that timeframe will be completely open-ended, as there will be absolutely no constraints or urgency imposed on the hearing officer to make a timely decision. To promote justice and ensure prompt administrative decisions, I therefore submit that "a contested case is considered to be submitted for a final decision" once a contested case hearing has concluded and all post-

14

hearing briefs and arguments have been submitted in accordance with the schedule implemented by the hearing officer. At this point, the 90-day timeframe should commence to run (or 120 days with extension). It bears noting that such a construction would not come as a surprise to DPHHS, which—as the Court notes at ¶ 14 of its Opinion—conceded in these proceedings that the Hearing Officer failed to comply with § 2-4-623, MCA.

¶35　　Here, the decision of the Hearing Officer was not entered until 276 days after all post-hearing briefs were submitted, and the decision of the Board came 63 days later. I would conclude the decision was therefore untimely, and would reverse and remand with instructions to vacate the Board's decision. I dissent from the Court's refusal to do so.

/S/ PATRICIA COTTER

Justice James C. Nelson joins the Dissent of Justice Patricia O. Cotter.

/S/ JAMES C. NELSON

15