FILED

September 4 2012

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 11-0725

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2012 MT 192

ERENE BRIESE,

       Petitioner and Appellant,

  v.

MONTANA PUBLIC EMPLOYEES'
RETIREMENT BOARD,

       Respondent and Appellee.

APPEAL FROM:     District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDV 10-982
Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Kathryn S. Syth; LaRance & Syth, P.C.; Billings, Montana

          Nathan S. Haney; Karell, Dyre, Haney, PLLP; Billings, Montana

      For Appellee:

          Katherine E. Talley; Special Assistant Attorney General; Helena, Montana

Submitted on Briefs:  May 16, 2012

Decided:  September 4, 2012

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 The Montana Public Employees' Retirement Board (MPERB) denied death benefits[1] to Petitioner Erene Briese (Erene) because her deceased husband, who had originally named her as his beneficiary under the Montana Sheriffs' Retirement System (SRS), had later filed a new designation, dropping her as a beneficiary, while marital dissolution proceedings were pending. Erene appealed to the District Court, which affirmed the MPERB's order. Erene now appeals the District Court's order. We reverse.

¶2 We consider the following issues on appeal:

¶3 *1. Did Erene's application for and acceptance of benefits on behalf of the children render her claim moot or waive her right to challenge the beneficiary designation?*

¶4 *2. Does a temporary restraining order issued in a marital dissolution proceeding under § 40-4-121(3), MCA, apply to the designation of a beneficiary under the Sheriffs' Retirement System?*

### PROCEDURAL AND FACTUAL BACKGROUND

¶5 Erene's late husband, David Briese (David) was a member of the SRS as a result of his employment as a deputy sheriff for Yellowstone County. The SRS is administered by the Montana Public Employees' Retirement Administration (MPERA), and governed by the MPERB. In 2001, David designated Erene as his primary beneficiary under the SRS plan.

---

[1] We will use the term "death benefits" to refer to any type of payment to a designated beneficiary upon the death of an SRS member before retirement under § 19-7-901, MCA.

¶6 In 2004, David filed a petition for dissolution of marriage. Under § 40-4-121(3), MCA, the dissolution court issued a standard temporary restraining order that restrained both parties from disposing of property, except in the usual course of business or for the necessities of life, without either the consent of the other party or an order of the court, or from changing the beneficiaries of "insurance or other coverage . . . held for the benefit of a party . . . ." In August 2006, while the marital dissolution proceedings were still pending, and without consent of Erene or the court, David filed a new designation with the SRS, dropping Erene as beneficiary and naming instead their two minor children. David was killed in the line of duty a few months later, in November 2006. At the time of his death, David and Erene were separated but not divorced.

¶7 Erene apparently learned of the 2006 change in beneficiary in early 2008. Counsel for Erene sent a letter to MPERA notifying the agency that Erene considered the 2006 change of beneficiaries to be void because it was done in violation of the temporary restraining order. MPERA wrote back, stating that it was statutorily obligated to honor the 2006 designation of David and Erene's children as beneficiaries, and instructing Erene, as the surviving parent of the minor children, to choose among various options for payment. Erene responded by submitting the necessary forms to activate monthly payments to Erene for the benefit of the children.

¶8 In 2009, Erene discovered that the payment of benefits to the children rather than to her had adverse tax consequences for the family, and she sought again to have David's 2001 beneficiary designation enforced by MPERA. MPERA issued an "administrative

3

decision," again denying Erene's request, and informing her of her right of administrative appeal. Erene appealed to the MPERB, which also denied her request.

¶9 In December 2009, Erene requested that the MPERB's denial of benefits be formally reviewed by a hearing examiner under the Montana Administrative Procedure Act (Title 2, chapter 4, MCA). By agreement of the parties, no hearing was held. The hearing examiner proposed, and the MPERB adopted, a final order holding that (1) Erene waived her right to contest the validity of the 2006 beneficiary designation when she applied for benefits on behalf of her children; (2) the issue was moot because, once benefits were granted to her children, the parties could not be restored to their original positions; and (3) the temporary restraining order in the dissolution proceedings was not applicable to an SRS beneficiary designation.

¶10 Erene petitioned the First Judicial District Court for judicial review of the MPERB's final order. The District Court affirmed the order without addressing the waiver or mootness arguments, finding that the temporary restraining order did not apply to David's designation of SRS beneficiaries.

**STANDARD OF REVIEW**

¶11 On judicial review of an agency's decision subject to the Montana Administrative Procedure Act, a district court reviews findings of fact for clear error and conclusions of law for correctness. *Micone v. Dept. of Pub. Health & Human Servs.*, 2011 MT 178, ¶ 10, 361 Mont. 258, 258 P.3d 403 (citing *In re Fair Hearing of Hofer*, 2005 MT 302, ¶¶ 13-14, 329 Mont. 368, 124 P.3d 1098). The same standard applies to our subsequent

4

review of the district court decision. *Micone*, ¶ 10. A district court's interpretation of a statute is a conclusion of law, which we review for correctness. *In re Marriage of Funk*, 2012 MT 14, ¶ 6, 363 Mont. 352, 270 P.3d 39 (citing *In re C.D.H.*, 2009 MT 8, ¶ 21, 349 Mont. 1, 201 P.3d 126).

## DISCUSSION

¶12 *1. Did Erene's application for and acceptance of benefits on behalf of the children render her claim moot or waive her right to challenge the beneficiary designation?*

¶13 Before reaching the substantive issue in this appeal, we address MPERB's claims that the issue is moot, or that Erene waived her claim when she applied for benefits on behalf of her minor children.

¶14 Mootness is a threshold issue which must be resolved before addressing the underlying dispute. *Med. Marijuana Growers Ass'n v. Corrigan*, 2012 MT 146, ¶ 18, ___ Mont. ___, ___ P.3d ___ (citing *Povsha v. City of Billings*, 2007 MT 353, ¶ 19, 340 Mont. 346, 174 P.3d 515). The mootness doctrine is one of several doctrines designed to limit the judicial power of this Court to justiciable controversies—that is, controversies "upon which a court's judgment will effectively operate, as distinguished from . . . dispute[s] invoking a purely political, administrative, philosophical, or academic conclusion." *Progressive Direct Ins. Co. v. Stuivenga*, 2012 MT 75, ¶ 16, 364 Mont. 390, 276 P.3d 867. The fundamental question to be answered in any review of possible mootness is "whether it is possible to grant some form of effective relief to the appellant." *Stuivenga*, ¶ 37.

5

¶15 MPERB claims that it is impossible to grant effective relief to Erene because, once the payments commenced, MPERB had fully discharged its obligations under the law. MPERB cites § 19-2-803, MCA, in support of its position. That section provides, in pertinent part:

> (1) . . . [I]f any benefit from a system is payable to a minor, the benefit must be paid to one of the following: (a) a surviving parent, if any

> .   .   .

> (3) The payment must be in full and complete discharge and acquittance of the board and system on account of the benefit. The person receiving benefit payments pursuant to this section shall account to the minor for the money when the minor reaches the age of majority.

We conclude that § 19-2-803, MCA, does not prevent the Court from granting relief or render moot the issue raised on appeal. Read as a whole, it protects MPERB from a minor's direct claims for *additional* payment *after* proper payment already has been made to a surviving parent or other designated recipient on behalf of the minor. The effect of the statute is to make the person receiving the benefit accountable directly to the minor. It does not apply to this case.

¶16 Pointing out that she did not elect a lump-sum payment, Erene claims it is possible to grant her effective relief by ordering that all future monthly payments be made to her in her own capacity, as well as by ordering the issuance of corrected tax forms. We agree with Erene that it is possible to grant some form of effective relief, at least insofar as future monthly payments are concerned. Since MPERB did not address the issuance of

6

corrected tax forms in its brief on appeal, we presume this is no longer a point of contention and do not address it further.

¶17 MPERB next argues that, even if the case is not moot, Erene has waived her challenge by applying for and accepting benefits on behalf of the children under the 2006 beneficiary designation. Waiver is the voluntary and intentional relinquishment of a known right, and must be manifested in some unequivocal manner. *Tvedt v. Farmers Ins. Group of Cos.*, 2004 MT 125, ¶ 33, 321 Mont. 263, 91 P.3d 1 (citing *Idaho Asphalt Supply v. DOT*, 1999 MT 291, ¶¶ 19, 23, 297 Mont. 66, 991 P.2d 434).

¶18 When denying Erene's initial claim for benefits in 2008, MPERA did not inform her of her right to challenge the denial by appeal to MPERB. Under Admin. R. M. 2.43.1501(2) (2003), Erene had the right to appeal MPERA's decision to MPERB. MPERA, in two separate letters to Erene dated May 30, 2008, (1) stated that MPERA was "require[d]" to honor the 2006 change of beneficiaries, and (2) informed Erene that she "must complete, have notarized and return to this office" the claim forms for the children before being provided with the payment options that were available. It gave no indication that further review was available by appeal to MPERB under Admin. R. M. 2.43.1501(2) at that time. As a matter of due process, MPERA was obligated to inform Erene of any right to appeal and the procedures for seeking such appeal. *See Pickens v. Shelton-Thompson*, 2000 MT 131, ¶¶ 13, 15, 300 Mont. 16, 3 P.3d 603 (citing Mont. Const. art. II, § 17; *Dorwart v. Caraway*, 1998 MT 191, ¶ 76, 290 Mont. 196, 966 P.2d 1121).

7

¶19 It was not until July 2009 that MPERA informed Erene of her appeal rights, in a letter that also stated that she had already "mooted" her argument by applying for benefits on her children's behalf more than a year earlier. As Erene's counsel told the District Court, under the circumstances, Erene had little choice but to apply for the benefits when she did because MPERA did not give her any other options and "she had to support the kids." Under these circumstances, we do not agree that Erene's application for benefits on behalf of her children in June 2008 was a voluntary and intentional relinquishment of a known right. We conclude that she did not waive her argument and we proceed to the merits of her claim.

¶20 *2. Does a temporary restraining order issued in a marital dissolution proceeding under § 40-4-121(3), MCA, apply to the designation of a beneficiary under the Sheriffs' Retirement System?*

¶21 When David filed his 2006 change of beneficiaries, MPERB had no knowledge of the dissolution proceedings and, therefore, no reason to question the new designation. Section 19-2-801(1)-(2), MCA, allows a member to designate a beneficiary on a membership card and, "[u]nless otherwise provided by statute," to change that designation by filing with the board a new membership card. Subsection (4) provides that, in general, "the beneficiary designation on the most recent membership card filed with the board is effective for all purposes until the member retires."

¶22 Erene argues, however, that David's 2006 change of designation was invalid and void as a matter of law because it violated the temporary restraining order issued in the marital dissolution proceeding under § 40-4-121(3), MCA. If the 2006 designation is

8

invalidated, then "the most recent membership card filed with the board" is the 2001 membership card designating her as David's beneficiary.

¶23    Section 40-4-121(3), MCA, provides, in relevant part:

When the clerk of the district court issues a summons pursuant to this chapter [(Termination of Marriage, Child Custody, Support)], the clerk shall issue and include with the summons a temporary restraining order:

(a) restraining both parties from transferring, encumbering, hypothecating, concealing, or in any way disposing of any property, real or personal, whether jointly or separately held, without either the consent of the other party or an order of the court, except in the usual course of business or for the necessities of life. . . .

(b) restraining both parties from cashing, borrowing against, canceling, transferring, disposing of, or changing the beneficiaries of any insurance or other coverage, including life, health, automobile, and disability coverage held for the benefit of a party or a child of a party for whom support may be ordered. . . .

The question posed by this case is whether the restriction of a restraining order issued under this statute on "changing the beneficiaries of any insurance or other coverage" applies to a change of beneficiary under the SRS. We hold that it does.

¶24    Section 40-4-101, MCA, provides that Montana's law concerning separation and dissolution of marriage, which encompasses the statute at issue in this case,

shall be liberally construed and applied to promote its underlying purposes, which are to:

(1) strengthen and preserve the integrity of marriage and safeguard family relationships;

(2) promote the amicable settlement of disputes that have arisen between parties to a marriage;

9

(3) *mitigate the potential harm to the spouses and their children caused by the process of legal dissolution of marriage*; [and]

(4) *make reasonable provision for spouse and minor children during and after litigation* . . . .

(Emphases added.)

¶25 The purpose of the law requiring a temporary restraining order is clearly to maintain the status quo with respect to all property of the parties. The statute is expansively worded to capture any property, real or personal, along with any inchoate right to property as the beneficiary of "any insurance or other coverage." This action mitigates the potential harm to spouses and children caused by the dissolution process itself and ensures that reasonable provision is made for the spouse and children during the litigation. The plain language of subsection (b) is quite broad, restricting both parties from unilaterally "changing the beneficiaries of *any* . . . coverage . . . held for the benefit of a party." Section 40-4-121(3)(b), MCA (emphasis added). On its face, therefore, the statute appears to restrict the removal of a spouse as a beneficiary under *any* type of benefit coverage, including as a beneficiary of an SRS retirement account, so long as a dissolution action is pending.

¶26 This interpretation is buttressed by application of the doctrine of statutory construction known as *ejusdem generis*. Under this doctrine, where a list of specific things is followed by a more general word or phrase, the general word or phrase is interpreted to include only items that are "similar in nature" to those listed. *Mattson v. Montana Power Co.*, 2009 MT 286, ¶ 32, 352 Mont. 212, 215 P.3d 675 (quoting *Circuit*

10

*City Stores v. Adams*, 532 U.S. 105, 114-15, 121 S. Ct. 1302, 1309 (2001)).  The statute specifically mentions life insurance among the types of coverage "includ[ed]" in its restriction.  The SRS coverage given to beneficiaries of deceased members is "similar in nature" to life insurance.  *See Schade v. Arizona State Retirement Sys.*, 510 P.2d 42, 44 (Ariz. 1973) ("The benefits provided for beneficiaries under the State Employees' Retirement System . . . are in the nature of proceeds of an annuity or life insurance contract."); *Rogers v. Rogers*, 152 So.2d 183, 186 (Fla. 1st Dist. App. 1963) (benefits provided for designated beneficiaries under the Florida Teachers' Retirement System are in the nature of the proceeds of a life insurance contract); *Teachers' Retirement Sys. v. Vial*, 304 So.2d 53, 56-57 (La. 1st Cir. App. 1974), *aff'd* 317 So.2d 179 (La. 1975) (death benefit features of the Teachers' Retirement System are indistinguishable from life insurance); *cf. Sowell v. Teachers' Retirement Sys.*, 214 Mont. 200, 204-05, 693 P.2d 1222, 1224-25 (1984) (comparing precedent concerning life insurance to the designation of a beneficiary in the Montana Teachers' Retirement System and applying statutes to determine beneficiary of death benefits).

¶27    Under a standard life insurance contract, payment is made upon the death of the insured to a "beneficiary" designated by the insured.  *See* 43 Am. Jur. 2d *Insurance* §§ 533, 1668 (LEXIS current through 2011).  Under the SRS plan, payment is made upon the death of the member to a "beneficiary" designated by the member.  *See* Admin. R. M. 2.43.1302(22) (2012) (defining a "primary beneficiary" as "a beneficiary designated to receive payments upon the death of a member").  Like life insurance, the beneficiary

11

designation is part of an agreement to pay monies on the death of the member and, like life insurance, the payment is not realized during the member's lifetime. The death benefits inure to the beneficiary directly through the decedent's designation of the beneficiary, the primary distinction being that the designation is made under and by virtue of specific statutory authority rather than under an insurance contract. Sections 19-7-901, 19-7-503(2), 19-7-801(5)(b)(ii), MCA; *see Vial*, 304 So.2d at 56-58. The coverage provided to Erene by David's designation of her as a "beneficiary" under the SRS plan—coverage that provides protection to the beneficiary in the event of the death of the member—is "similar in nature" to life insurance, and therefore included within the language of § 40-4-121(3)(b), MCA, and the restraining order.

¶28 The statute, moreover, is not confined to "insurance" but also includes "any . . . other coverage." We construe a statute to give effect to all of its provisions. Section 1-2-101, MCA; *see also State v. Booth*, 2012 MT 40, ¶ 12, 364 Mont. 190, 272 P.3d 89. Section 40-4-121(3)(b), MCA, construed liberally and applied to promote its underlying purposes, prohibits any changes of beneficiary under the SRS plan, if the beneficiary at the time the restraining order is issued is a "party or a child of a party for whom support may be ordered."

¶29 MPERB's reliance on cases from other jurisdictions in which specific restraining orders were held to be too vague to apply to a change of beneficiaries for death benefits is misplaced. As indicated above, the language of Montana's standard restraining order clearly enjoins any change of beneficiaries for "any . . . coverage . . . held for the benefit

of a party." The broad language restraining a change of beneficiaries eliminates any need to specifically list all of the types of accounts to which it applies. The use of the term "*including* life, health, automobile, and disability coverage" indicates that this listing of types of coverage is not exclusive. (Emphasis added.) *See e.g. In re Marriage of Keepers*, 213 Mont. 350, 356, 691 P.2d 810, 813 (1984); Norman J. Singer & J.D. Shambie Singer, *Sutherland on Statutes and Statutory Construction* vol. 2A, § 47.23, 417 (7th ed., West 2007) ("When 'include' is utilized, it is generally improper to conclude that entities not specifically enumerated are excluded."). The restraining order in this case applied to David's change of SRS beneficiary.

¶30 That Montana law did not *require* David to designate Erene as his beneficiary in the first place does not change the fact that he did so. Once Erene was designated as a beneficiary, the account was held "for the benefit of" Erene as well as David, and the restraining order applied. Nor does it matter that the change of beneficiaries did not affect the value of David's retirement benefits or how they ultimately may have been distributed as part of the marital estate. Under its plain language, the temporary restraining order issued under § 40-4-121(3)(b), MCA, prohibited David from changing his SRS beneficiary during the marriage dissolution proceedings.

¶31 Finally, the fact that David substituted his children, who also were protected by the temporary restraining order, for his spouse does not change the result. Section 40-4-121(3)(b), MCA, does not include any exceptions for changes to beneficiaries from

spouse to protected child or vice versa.[2] A temporary restraining order issued under the broad restriction of the statute prohibits a party's attempt to change one of those designated beneficiaries during the proceeding. David's 2006 change of beneficiaries was unlawful because it was made in violation of the restraining order and § 40-4-121(3), MCA.

¶32 MPERB nonetheless argues that the temporary restraining order does not apply to it because it was not a party to the dissolution action, citing §§ 40-4-121(3)(b) and 27-19-105, MCA. The restraining order did not, by its terms, restrain MPERB from any particular acts. Nor was MPERB a "person[] in active concert or participation with [David]" within the meaning of § 27-19-105(4), MCA. Whether MPERB was bound by the terms of the restraining order is not the issue here, however. Under § 19-2-801(2), MCA, a member is not allowed to change beneficiaries in violation of a statutory provision. David's 2006 beneficiary designation was made in violation of a statutorily-mandated court order that was binding on him.

¶33 Section 40-4-121(3)(b), MCA, provides protection to some individuals or entities affected by a violation of the temporary restraining order. That provision states: "[N]othing in this subsection (3) adversely affects the rights, title, or interest of a purchaser, encumbrancer, or lessee for value if the purchaser, encumbrancer, or lessee does not have actual knowledge of the restraining order." As administrator of the

---

[2] David could have changed his SRS beneficiary with the consent of Erene or an order of the court. *Cf.* § 40-4-121(3)(a), MCA (restraining both parties from disposing of any property "without either the consent of the other party or an order of the court"). There is no indication in the record that he had either consent or a court order.

retirement system, MPERA is not a "purchaser, encumbrancer, or lessee for value" under § 40-4-121(3)(b). Furthermore, MPERA obtained actual knowledge of the restraining order early in 2008, before any benefits were paid, when Erene's counsel sent a letter challenging David's 2006 change of beneficiaries.

¶34 MPERB further contends that public policy and legislative intent do not support application of § 40-4-121(3)(b), MCA, to beneficiary changes in the SRS plan, citing *Sowell*, 214 Mont. at 207, 693 P.2d at 1226, and *State ex rel. Neuhausen v. Nachtsheim*, 253 Mont. 296, 301, 833 P.2d 201, 204 (1992), *superseded*, 1993 Mont. Laws ch. 259. Neither of those cases applies to Erene's case, however, as neither of them interpreted § 40-4-121(3)(b), MCA, or involved the effect of a temporary restraining order. *Sowell* involved a claim for death benefits by a surviving spouse who had never been named as a beneficiary, not, as in Erene's case, a spouse who was the properly designated beneficiary at the time a restraining order restricting changes to the beneficiary was issued. *Neuhausen* did not even address a claim for death benefits by a beneficiary, but rather involved the division of retirement benefits between a member and his ex-spouse as part of a divorce decree.

¶35 Also inapt is MPERB's citation to § 19-2-1004, MCA, which states, in relevant part, that "the right of a person to any benefit or payment from a retirement system or plan" is not subject to execution, garnishment, attachment or any other process. This provision does not prevent MPERB or a district court from determining the rights of various parties to the benefits of the plan in the first place, as in this case.

15

¶36   The Dissent questions the administrative forum in which Erene has raised her claim for benefits and argues that MPERB committed "no legal error," suggesting that Erene's only remedy was to request relief in the dissolution proceeding or to file a separate declaratory judgment action.  We have held that "an action [for] dissolution of marriage abates upon the death of either party prior to the entry of decree, and at that time the trial court loses jurisdiction to determine incidental issues such as the disposition of property rights involved in the marriage." *In re Marriage of Lawrence*, 212 Mont. 327, 330-31, 687 P.2d 1026, 1028 (1984).  We need not decide in this case whether a court retains jurisdiction over the enforcement of orders entered before one of the spouses has died.  *See Aither v. Estate of Aither*, 913 A.2d 376, 379 (Vt. 2006) (noting split of authority).  Here, MPERB claimed the authority to determine the applicability of a restraining order issued pursuant to § 40-4-121(3), MCA, to an SRS account, and found it to be inapplicable as a matter of law.  Erene properly pursued this request for judicial review in order to adjudicate the validity of MPERB's determination, and the District Court had the authority to decide that issue.  Section 2-4-704(2)(a)(i), (iv), MCA (authorizing reversal of an agency decision if the district court determines that the administrative decision is "in violation of . . . statutory provisions" or "affected by other error of law").

¶37   Either MPERB or Erene could have resolved any uncertainties in MPERB's legal obligations by seeking a declaratory judgment under the provisions of Montana's Uniform Declaratory Judgments Act, Title 27, chapter 8, MCA.  *See* § 27-8-102, MCA

(stating that the purpose of the Act is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations"); *Sowell,* 214 Mont. at 202, 693 P.2d at 1223 (action brought by a denied claimant "to declare her rights with respect to the retirement and death benefit account of . . . deceased"). The availability of an alternative remedy did not foreclose Erene's right to judicial review of MPERB's administrative determination.

¶38 We have not had occasion to address the question whether a violation of a temporary restraining order automatically voids the beneficiary change. In most cases, the remedy for violation of a restraining order is a civil or criminal contempt action against the violator. *See* §§ 3-1-501(1)(e), 45-7-309(1)(c), MCA. Such a remedy, however, is "no remedy at all in this context; it evaporates [with the death of the violator,] the instant it is needed." *Aither*, 913 A.2d at 380.

¶39 Courts from other jurisdictions have taken various approaches toward this problem. Many courts have held that a court may set aside an improper change of beneficiaries and award the proceeds to the beneficiary who was protected by the restraining order. In *Webb v. Webb*, 134 N.W.2d 673, 674-75 (Mich. 1965), for example, the Michigan Supreme Court stated:

> It needs no citation that for violation of an injunction, a court, under its general powers, may order a return to the *status quo*. . . . Transfers of property in violation of an injunction are invalid and may be set aside . . . and subsequent death of the injunction violator does not prevent the court from exercising such power.

17

(Citations omitted.) *See also Northwestern Mutual Life Ins. Co. v. Hahn*, 713 N.W. 2d 709, 712 (Iowa App. 2006) ("[A] court may set aside a change in beneficiary of a life insurance policy made in violation of a temporary injunction."); *Aither*, 913 A.2d at 381 ("Because husband's change in the beneficiaries of his life insurance policy was in violation of the family court order, wife may be entitled to a return to the status quo the order was intended to preserve."); *Standard Ins. Co. v. Schwalbe*, 755 P.2d 802, 806 (Wash. 1988) ("[W]e hold that the trial court had the power to award the insurance proceeds to . . . the named beneficiary protected by the preliminary injunction.").

¶40 Other courts, while holding that the violation does not serve to *automatically* void the beneficiary change, generally have found that courts have the authority to grant some form of relief through use of their powers of equity. *See e.g. Valley Forge Life Ins. Co. v. Delaney*, 313 F. Supp. 2d 1305, 1307-09 (M.D. Fla. 2002) (rejecting a per se rule that automatically voids beneficiary changes made in violation of a temporary injunction, but acknowledging that a removed beneficiary may seek redress in a court of equity); *Davis v. Prudential Ins. Co.*, 331 F.2d 346, 349-51 (5th Cir. 1964) (holding that an injunction does not void automatically a prohibited transfer, but that the surviving spouse nevertheless was entitled to recovery under a theory of constructive fraud); *American Family Life Ins. Co. v. Noruk*, 528 N.W.2d 921, 923-24 (Minn. App. 1995) (rejecting a bright-line rule under which a change of beneficiary made in violation of a temporary court order would be void as a matter of law, holding that "equitable principles, rather than a per se rule, should govern").

¶41    At a minimum, we agree with those courts that have held that a court has equitable power to order a return to the status quo when a party violating a temporary restraining order has died.[3]  Thus, in this case, the District Court should have invalidated David's 2006 change of beneficiaries because it was made in violation of the statutorily-mandated restraining order, and should have determined that his 2001 designation of Erene is "the most recent membership card filed with the board" under § 19-2-801(4)(a), MCA.

## CONCLUSION

¶42    The District Court's order of October 7, 2011, is reversed.  The case is remanded for entry of judgment declaring the 2006 beneficiary designation invalid and for further proceedings consistent with this opinion.


/S/ BETH BAKER


We concur:


/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS

---

[3] As the California Supreme Court has observed, "[t]he purpose of the provisions requiring the filing of a change of beneficiary is largely to protect the retirement system against the possibility of being called upon to pay twice." *Watenpaugh v. State Teachers' Retirement Sys.*, 336 P.2d 165, 169 (Cal. 1959).  Erene is not asking MPERB to pay twice, nor is she asking for a recipient who was wrongfully paid benefits to return them.  We do not, therefore, express any opinion on a district court's authority to make an equitable distribution in such a circumstance.

Justice James C. Nelson, concurring.

¶43   I concur in the Court's Opinion on the facts presented here. It is especially troubling to me that MPERA failed to notify Erene of her right to appeal the agency's denial of her challenge to David's change of beneficiary and that MPERA effectively stampeded Erene into applying for benefits. Opinion, ¶¶ 7, 17-19. It is equally troubling that MPERA obtained actual knowledge of the restraining order before any benefits were paid, yet went ahead and commenced paying benefits pursuant to David's change of beneficiary with the knowledge that the change was being challenged. Opinion, ¶ 33. Given the agency's knowledge of the restraining order, of Erene's challenge, and of the legal questions of first impression at issue, it seems to me that MPERA, taking a conservative approach, could have worked through the court system to reach a temporary, and ultimately final, disposition of this matter that would have protected the interests of both Erene and the agency. Under the circumstances described above, it is difficult not to conclude that MPERA was the author of its own problems.

¶44   I believe the Court's legal analysis is sound and achieves the correct result in this case. I am somewhat reluctant, however, to extrapolate beyond that for several reasons. First, this is a case of first impression and, as noted, the facts here militate in Erene's favor. Our jurisprudence will necessarily have to develop on a case-by-case basis, consistent with the facts and how, if at all, the Legislature addresses these sorts of situations. Second, it is important to acknowledge that in many dissolution cases, the public employee's retirement benefit may be the only significant asset in the marital

20

estate. Accordingly, it is vital that this asset be properly distributed according to whatever law applies under the circumstances. Third, this case also demonstrates the need for the Legislature to amend the statutes in Titles 40 and 19, MCA, to deal with situations such as that presented here and other cases where the member changes beneficiaries in violation of a temporary restraining order. In this regard, and in fairness to MPERA, such statutory amendments should require that where a member is involved in a dissolution proceeding, any temporary restraining order similar to the one in this case must be, upon issuance, contemporaneously served on the agency and provide that the agency be allowed to intervene in the proceedings to the extent necessary to resolve any dispute in the distribution of the member's retirement benefits.

¶45    With those caveats and suggestions, I concur.


/S/ JAMES C. NELSON



Justice Jim Rice, dissenting.


¶46    This administrative appeal challenges MPERB's implementation of David's 2006 beneficiary designation and refusal to reverse that action, which Erene argues was an "erroneous decision." However, Erene has established no legal error on the part of MPERB.

21

¶47     MPERB properly acted pursuant to its contractual, statutory, and constitutional obligations to honor the beneficiary request made to it by David in 2006. *See* § 19-2-502, MCA; Mont. Const. art. VIII, § 15. The Court nonetheless reverses MPERB's actions and faults MPERB for failing to seek a declaratory judgment to resolve "any uncertainties in [its] legal obligations." Opinion, ¶ 37. The Court attempts, but fails to correctly identify, any legal error committed by MPERB, and acknowledges, as it must, that MPERB was not subject to the temporary restraining order (TRO). Clearly, there were no uncertainties in MPERB's obligations, but more, it was not MPERB's duty to resolve any uncertainties that Erene may have perceived.

¶48     As the Court notes, the TRO, by its own express terms, was directed to, and applied to, David and Erene only ("Respondent and Petitioner are hereby restrained from . . . ."). The TRO was not directed to any third parties, here, MPERB. This is consistent with statute. Section 40-4-121(3), MCA, provides that a domestic TRO restrains "both parties" from acting to transfer their assets. Likewise, § 27-19-105, MCA, governing the scope of injunctions and restraining orders, provides that a restraining order shall "*be binding only* upon the parties to the action; their officers, agents, employees, and attorneys; and *those persons* in active concert or participation with them who receive actual notice of the order by personal service or otherwise." (Emphasis added.) Although MPERB had not received notice of the TRO when it acted, thus excluding it from the TRO's reach, that is not the important point. Critically, under the statute, MPERB was not a "person" acting in concert or participation with David. Section 27-19-

22

105, MCA. Rather, MPERB was a government agency acting pursuant to its legal obligations and authority. While David was bound by the TRO, MPERB was not. Rather, it was bound to follow the law governing the agency.

¶49 Fundamentally, and consistent with our statutes above cited, "[c]ourts are without jurisdiction to enjoin administrative agencies from performing the duties delegated to them by proper statute or authority." 42 Am. Jur. 2d *Injunctions* § 156 (2010). Instead, an injunction or restraining order "is an appropriate remedy to prevent wrongful acts by a public official who is *acting without lawful authority* and beyond the scope of his or her official power . . . ." 42 Am. Jur. 2d *Injunctions* § 156 (emphasis added). MPERB was unquestionably acting within its lawful authority to meet its clear legal obligations to David, and in so doing, was not subject to the TRO. MPERB was faced with no "uncertainties" in its legal obligations which compelled it to seek a declaratory judgment, as the Court declares. Opinion, ¶ 37. There being nothing legally improper about MPERB's actions, Erene's administrative appeal of that action should be rejected.

¶50 The Court seeks to evade these principles by declaring whether "MPERB was bound by the terms of the restraining order is not the issue," Opinion, ¶ 32, but the Court is mistaken. The premise of Erene's challenge is that MPERB erred in failing to reverse its actions when presented with the TRO. The TRO is the only order which MPERB is alleged to have violated. If MPERB complied with governing law in changing the beneficiary, and was not subject to the TRO, its decision is not subject to reversal in this administrative proceeding.

23

¶51 The Court acknowledges that the legal error here—changing beneficiaries in violation of the TRO—was committed by *David*. Opinion, ¶ 34. However, realizing that David's error cannot serve as a basis to reverse MPERB's actions in this administrative appeal, the Court attempts to manufacture error on the part of MPERB. The Court reasons that MPERB's reversible error occurred when it found that § 40-4-121(3), MCA, was "inapplicable as a matter of law" to an SRS account. Opinion, ¶ 36. However, even assuming *arguendo* that MPERB so erred, such an error in statutory interpretation still would not subject MPERB to the TRO, and therefore does not establish that MPERB committed reversible error for purposes of this administrative proceeding. An error in *interpretation* does not necessarily equate to an error in *action*, and here MPERB clearly acted properly by complying with its governing authority. Again, the TRO was directed to the parties, not MPERB. MPERB was obligated to comply with its governing authority until and unless it received a proper legal directive to do otherwise. MPERB acknowledges it is subject to family law orders affecting retirement plans entered pursuant to § 19-2-907, MCA, which the Legislature specifically enacted to authorize courts to recognize and modify retirement plans within domestic proceedings, following our decision to the contrary in *Neuhausen*. However, such an order was apparently never pursued, and Erene could not turn this administrative appeal into a declaratory judgment action to challenge the validity of *David's* actions during the dissolution proceeding. This administrative appeal could only determine whether the agency properly acted under its governing authority, and I would conclude it clearly did so. It should not be this

24

Court's business to rectify a perceived injustice in disregard to established statutory procedures.

¶52 If Erene believed that *David's* actions had violated the TRO and had created uncertainty, it was incumbent upon her to initiate a declaratory judgment action or seek judicial relief from the dissolution court which had issued the TRO. While I take no position on the merits, a claim that David had violated the TRO would arguably have remained justiciable even after his death. While the dissolution court may well have lost jurisdiction to distribute the marital estate, the question would be whether a death barred the court from addressing a prior and undisclosed violation of a restraining order which had prejudiced a party. Such a question was arguably "one upon which a court's judgment will effectively operate." *Progressive Direct Ins. Co. v. Stuivenga*, 2012 MT 75, ¶ 16, 364 Mont. 390, 276 P.3d 867. Assuming the court determined the TRO had been violated, concrete relief was possible. However, the District Court reviewing MPERB's actions in this administrative appeal clearly had no authority to address that violation.

¶53 I would affirm the District Court.

/S/ JIM RICE

25