**IN THE MATTER OF THE ESTATE OF
MARILYN M. HEDRICK,
Deceased and Appellant,
and
JACQUELYN SULLIVAN, AS SUCCESSOR
TRUSTEE TO THE MARILYN M. HEDRICK
1996 LIVING TRUST,
Third-Party Respondent and Appellant,
v.
LEROY LAMACH, ATTORNEY-IN-FACT
FOR SHEENA LAMACH,
Objector/Petitioner and Appellee.**

No. DA 13-0657.
Submitted on Briefs March 26, 2014.
Decided May 7, 2014.
2014 MT 118.
375 Mont. 74.
324 P.3d 1202.

For Appellant: **George T. Kimmet**, John T. Jones, Moulton Bellingham PC, Billings.

For Appellee: **William A. Schreiber**, Attorney at Law, Polson.

For Third-Party Respondent: **Gregory Paul Johnson**, Attorney at Law, Billings.

CHIEF JUSTICE McGRATH delivered the Opinion of the Court.

¶1 The Estate of Marilyn M. Hedrick and Jacquelyn Sullivan, as successor trustee to the Marilyn M. Hedrick 1996 Living Trust, appeal from an order of the Thirteenth Judicial District, Yellowstone County, denying their motions for summary judgment and granting summary judgment in favor of petitioner and objector Leroy Lamach.

¶2 We restate the issue presented for review as whether the District Court erred when it concluded that the joint will executed by Marilyn and Stanley Hedrick prohibited Marilyn from transferring property to a trust after Stanley's death.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 Marilyn and Stanley Hedrick executed a joint will on July 18, 1983. Each had three children from previous marriages. The will read, in part:

> THIRD: We mutually give to whichever of us shall be the survivor the entire residue of our property which we may respectively own at our death.
>
> FOURTH: The survivor of us gives the entire residue of his or her property which he or she may own at the time of death to our children by former marriages, JUDITH A. ARMOLD, KENNETH D. HEDRICK, SHEENA S. LAMACH, PAUL H. SIMPSON, JACQUELYN M. KRUEGER and JERRY J. SIMPSON, in equal shares, share and share alike.
>
> . . .
>
> SIXTH: Our purpose is to dispose of our property in accordance with a common plan. The reciprocal and other gifts made herein are in fulfillment of this purpose and in consideration of each of us waiving the right, during our joint lives, to alter, amend or revoke this Will in whole or in part, by codicil or otherwise, without notice to the other, or under any circumstances after the death of the first of us to die.

Stanley died in 1995, and his estate passed to Marilyn. In 1996, Marilyn transferred much of her property to the Marilyn M. Hedrick 1996 Living Trust. Marilyn's three children and one of Stanley's

children were beneficiaries of the trust. Jacquelyn (Krueger) Sullivan was named successor trustee. Two of Stanley's children, Judith Armold and Sheena Lamach, were not included as beneficiaries. Sheena Lamach is incapacitated and resides in an extended care facility.

¶4 Marilyn died in 2012 and the estate entered informal probate. Under the terms of the will, the residue of Marilyn's estate was to be divided equally among the six children. The residue consisted of the proceeds from the sale of Marilyn's home and personal property, totaling $235,722.64. Sheena Lamach's husband, Leroy Lamach, as her attorney-in-fact, filed a petition objecting to this proposed distribution. Lamach argued that the transfer of assets to the trust violated the terms of the joint will, and asked that the trust assets be distributed equally among the six children. Sullivan was joined as a third party.

¶5 The parties agreed there were no genuine issues of material fact regarding the existence or contents of the will and filed cross-motions for summary judgment asking the District Court to interpret the will as a matter of law. At the summary judgment hearing, Lamach stated his assumption that the trust was revocable. On the basis of that assumption, he claimed trust property had not effectively been transferred out of Marilyn's ownership during her lifetime. He claimed the trust operated only to change the distribution of Marilyn's property after her death, and so violated the intent of the joint will. No evidence of the terms of the trust was offered. The District Court responded that it intended to address only the interpretation of the will, not the terms of the trust.

¶6 Following the hearing, the District Court granted summary judgment in favor of Lamach. The District Court concluded that although "it is true that Mrs. Hedrick received the entirety of Mr. Hedrick's estate upon his death, absent any restrictions," she was not free to "create a trust that essentially supersedes the Will, preventing two of the six children from receiving their fair share of the estate." The District Court found that creation of the trust, though it did not in fact alter the will, "substantially altered the result of distribution." This appeal followed.

## STANDARD OF REVIEW

¶7 Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. M. R. Civ. P. 56(c). This Court reviews a district court's grant of summary judgment de novo, applying the same criteria as the district court. *In re Estate of Kuralt*, 1999 MT 111, ¶ 19, 294

Mont. 354, 981 P.2d 771. The interpretation and construction of a will presents a question of law, which we review for correctness. *In re Estate of Ayers*, 2007 MT 155, ¶ 12, 338 Mont. 12, 161 P.3d 833.

## DISCUSSION

¶8   *Whether the District Court erred when it concluded that the joint will prohibited Marilyn from transferring property to a trust after Stanley's death.*

¶9   The words used in a will are interpreted according to their ordinary, grammatical sense, unless there is evidence of a clear intent otherwise. *Ayers*, ¶ 14. The object of judicial interpretation of a will is to determine the intent of the testator. *In re Estate of Snyder*, 2000 MT 113, ¶ 10, 299 Mont. 421, 2 P.3d 238. Interpretation of the will should give effect to every provision of the will. *Snyder*, ¶ 10.

¶10   The joint will states that the surviving spouse will receive the "entire residue" of the property owned by the deceased spouse at the time of his or her death. No restrictive language limits how the surviving spouse may use this property. At the summary judgment hearing and on appeal, Lamach acknowledged that Marilyn "had no limitations as to how to use or dispose of any of the inherited property during her life." The District Court agreed. Marilyn was free to transfer property during her lifetime.

¶11   The joint will also states that, upon the death of the surviving spouse, "the entire residue of his or her property which he or she may own at the time of death" is to be divided equally among the six children. The "residue," in its ordinary sense, refers to the property "left over after a part is removed or disposed of." *Black's Law Dictionary* 1424 (Bryan A. Garner ed., 9th ed., West 2009); *see also Black's Law Dictionary* at 629 ("residuary estate"). Property that has been transferred to a trust during the lifetime of the deceased is not considered part of his or her probate estate. *Cate-Schweyen v. Cate*, 2000 MT 345, ¶ 26, 303 Mont. 232, 15 P.3d 467; 34A Am. Jur. 2d *Federal Taxation* ¶ 110,102 (2010). The will itself indicates that the "residue" is property owned by the deceased at the time of death. Property transferred by Marilyn during her lifetime is not part of the "residue" to be distributed among the six children.

¶12   Finally, the joint will states Stanley and Marilyn's intention to dispose of their property in accordance with a "common plan," and prohibits the surviving spouse from altering, amending, or revoking the will "under any circumstances after the first of us to die." Where there is a "clear and unequivocal devise" of property, the use of that

property can be limited only by language that is "unmistakable, clear, convincing, explicit, unequivocal, and practically free from doubt." *In re Estate of Bolinger*, 284 Mont. 114, 124, 127, 943 P.2d 981, 987, 989 (1997) (internal quotes omitted). The general intent stated in a will may not be read to override its specific provisions. *See Bolinger*, 284 Mont. at 126-27, 943 P.2d at 988-89. The will plainly leaves the entire residue of Stanley's estate to Marilyn. The only explicit restriction on this devise is that Marilyn may not alter, amend, or revoke the will. The only explicit devise to the six children is that they are to receive equal shares of the residue of Marilyn's estate. We may not construe the general purpose of the will in a way that alters its specific provisions by imposing further restrictions on Marilyn's inheritance or granting additional rights to the children.

¶13 ██ The sole issue presented for summary judgment was whether the will, by its terms, allowed Marilyn to transfer property into a trust during her lifetime. Lamach does not, in fact, contest that Marilyn had the right to transfer property. Instead, he claims that creation of the trust did not effectively transfer property out of Marilyn's control during her lifetime. If Marilyn retained ownership of trust property, Lamach argues, it should be considered part of the residue of her estate and distributed equally among the six children. The Estate and Sullivan, on the other hand, ask this Court to declare that trust assets are not part of the estate and order distribution of trust assets according to the terms of the trust. These issues relate to the validity of the trust, not the interpretation of the will. No evidence has been produced regarding the terms of the trust, and the issues raised are therefore inappropriate for resolution on summary judgment. The parties may address the validity of the trust in subsequent proceedings.

## CONCLUSION

¶14 For the reasons stated above, we reverse the order of the District Court and remand for entry of summary judgment in favor of the Estate and Sullivan on the issue of whether the joint will allowed Marilyn to establish a trust during her life.

¶15 Reversed and remanded.

JUSTICES WHEAT, RICE, BAKER and McKINNON concur.