FILED

December 23 2014

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0132

DA 14-0132

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 337

IN THE MATTER OF THE ESTATE OF:

WILLIAM J. CORRIGAN,

      Deceased.

APPEAL FROM:    District Court of the Third Judicial District,
In and For the County of Deer Lodge, Cause No. DP 12-20
Honorable Ray J. Dayton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Robert G. McCarthy, McCarthy Law, P.C.; Butte, Montana

      For Appellee:

      Bradley J. Luck, Garlington, Lohn & Robinson, PLLP; Missoula, Montana

      Vuko J. Voyich, Anderson & Voyich, PLLC; Livingston, Montana

      Craig Puccinelli (self-represented); Missoula, Montana

      Brian Corrigan (self-represented); Denver, Colorado

Submitted on Briefs:  November 26, 2014
Decided:  December 23, 2014

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1    Mary Helen Corrigan appeals from the order of the Third Judicial District Court, Deer Lodge County, denying her motion for summary judgment and granting Rebecca Voyich's motion for summary judgment. We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2    The material facts in this case are undisputed.

¶3    Mary Helen Corrigan is the wife of the decedent, William Corrigan, and personal representative of his estate. Mary Helen and William have three adult children: Rebecca Voyich, Brian Corrigan, and Craig Puccinelli.

¶4    On February 12, 2003, William opened a traditional IRA account with State Farm. William designated Mary Helen as the primary beneficiary of the IRA, with Rebecca, Brian, and Craig (the Adult Children) as secondary beneficiaries. On May 28, 2008, William filed a Petition for Dissolution of Marriage in the Montana Third Judicial District Court, Deer Lodge, Montana, naming Mary Helen as respondent. The court issued a Summons and Temporary Restraining Order (TRO) as required by § 40-4-121(3), MCA. The TRO stated that William and Mary Helen were prohibited from:

> cashing, borrowing against, cancelling, transferring, disposing of, or changing the beneficiaries of any insurance or other coverage, including life, health, automobile, and disability coverage held for the benefit of a party or child of a party for whom support may be ordered.

The TRO provided that it would remain in effect until amended or vacated by the court, and

2

that either party could move the court to amend or vacate the TRO. However, despite the court's issuance of the Summons and TRO, William never served either on Mary Helen and she never made an appearance in the matter. The marriage was never dissolved and the action was never dismissed by the District Court.

¶5    Almost four years later, on March 9, 2012, William amended the terms of the IRA, removing Mary Helen as beneficiary and naming the Adult Children primary beneficiaries. William died on April 11, 2012.

¶6    State Farm contacted the Adult Children about presenting claims as primary beneficiaries of the IRA. After learning that she was no longer the primary beneficiary, Mary Helen alerted State Farm that she would make an elective share claim on the IRA under § 72-2-221, MCA. Litigation ensued and Mary Helen and the Adult Children filed cross-motions for summary judgment.[1] The question at issue was whether Mary Helen could make an elective share claim on the IRA. Resolution of that issue hinged on whether Mary Helen was the primary beneficiary of the account. Mary Helen argued that the TRO prohibited William from altering the beneficiary status of the IRA, and asked the District Court to void the beneficiary change and to reinstate her as primary beneficiary. The Adult Children countered that because the TRO was never served on Mary Helen it was invalid and did not prevent William from effecting a change of beneficiary. The District Court granted summary judgment to the Adult Children and Mary Helen appealed.

---

[1] Brian and Craig joined Rebecca's motion for summary judgment and supporting briefs before the District Court. Both have joined Rebecca's brief before this Court.

¶7     The parties present a single issue for review:

*Did the District Court err by refusing to enforce the temporary restraining order and void the decedent's change of beneficiary?*

## STANDARD OF REVIEW

¶8     We review a district court's grant of summary judgment de novo. *Jensen v. State*, 2014 MT 118, ¶ 7, 375 Mont. 74, 324 P.3d 1202. We review a district court's conclusions of law for correctness. *Varano v. Hicks*, 2012 MT 195, ¶ 7, 366 Mont. 171, 285 P.3d 592.

## DISCUSSION

¶9     *Did the District Court err by refusing to enforce the temporary restraining order and void the decedent's change of beneficiary?*

¶10     Dissolution of marriage in Montana is governed by Title 40, Chapter 4, MCA, Montana's enacted version of the Uniform Marriage and Divorce Act of 1974 (UMDA). Except as otherwise provided, the Montana Rules of Civil Procedure apply to all proceedings under Title 40, Chapter 4, MCA. Section 40-4-103(1), MCA. Montana Rule of Civil Procedure 4(t)(1) requires a plaintiff to serve a defendant within three years of filing a complaint. If the plaintiff does not timely serve the defendant, the district court must dismiss the action without prejudice. M. R. Civ. P. 4(t)(1).

¶11     When a party files a petition for dissolution of marriage in Montana the Clerk of District Court must issue a summons with a TRO attached. The TRO:

> restrain[s] both parties from cashing, borrowing against, canceling, transferring, disposing of, or changing the beneficiaries of any insurance or other coverage, including life, health, automobile, and disability coverage held for the benefit of a party or a child of a party for whom support may be

4

ordered.

Section 40-4-121(3)(b), MCA. "[A]ny insurance or other coverage" includes individual retirement accounts. *Briese v. Mont. Pub. Emp. Ret. Bd.*, 2012 MT 192, ¶¶ 25-28, 366 Mont. 148, 285 P.3d 550. The TRO terminates upon order of the court or when the petition for dissolution of marriage is voluntarily dismissed. Section 40-4-121(9)(b), MCA. The purpose of the TRO is to "maintain the status quo with respect to all property of the parties." *Briese*, ¶ 25. "This action mitigates the potential harm to spouses and children caused by the dissolution process itself and ensures that reasonable provision is made for the spouse and children during the litigation." *Briese*, ¶ 25.

¶12 In the District Court, Mary Helen challenged the legitimacy of William's change of beneficiary. She argued that the TRO became effective when William filed for dissolution of marriage and, because it was never dismissed by the court, it prohibited William from changing the beneficiary designation on his IRA. Mary Helen further argued that our holding in *Briese* required the District Court to void William's change of beneficiary and reinstate her as primary beneficiary of the IRA. The Adult Children countered that the District Court correctly refused to void the change of beneficiary because 1) when William changed beneficiaries the deadline for service of the TRO had passed and it would be inequitable to void the change, and 2) because Mary Helen was never served with the Summons or TRO there was no active dissolution upon which the TRO could attach.

¶13 Ruling on cross-motions for summary judgment the District Court acknowledged that William had failed to serve Mary Helen with the TRO within the three-year service deadline

5

under Rule 4(t)(1), M. R. Civ. P. However, the court found that despite a statutory requirement that the case be dismissed after the service deadline passed, no dismissal was issued. The court therefore reasoned that the TRO remained in effect and that William violated the TRO when he changed beneficiaries on the IRA.

¶14 The court then addressed our decision in *Briese*. Based on our holding the court correctly noted that, in certain circumstances, it had the authority to void a change of beneficiary made in violation of a divorce TRO if equity demanded it.[2] In this case, based on the lack of service and the expiration of the deadline for service, the court concluded that equity would not support voiding the change of beneficiary. Accordingly, the court granted summary judgment to the Adult Children.

¶15 We agree with the District Court's refusal to void the change of beneficiary, however, we disagree with its reasoning for doing so. We may affirm a district court decision that is correct regardless of the district court's reasoning in reaching its decision. *PacifiCorp v. State*, 2011 MT 93, ¶ 54, 360 Mont. 259, 253 P.3d 847.

¶16 William filed for dissolution of marriage on May 28, 2008. Under Rule 4(t)(1), M. R. Civ. P., he had until May 28, 2011 to serve Mary Helen. The rule states that if service is not accomplished within the three years, "the court, upon motion or on its own initiative, *must* dismiss [the] action without prejudice." Rule 4(t)(1), M. R. Civ. P. (emphasis added). By the time William made his change of beneficiary on March 9, 2012, the deadline for service had expired. The District Court was required to dismiss the case and the TRO for

6

failure to perfect service after May 28, 2011. The District Court, however, failed to dismiss either. Nonetheless, we conclude that William's failure to serve Mary Helen within the three year deadline rendered the TRO ineffective once that deadline had passed.[3]

¶17    Mary Helen argues that the District Court erred in refusing to void the beneficiary change based on our holding in *Briese*. Her reliance on *Briese* is misplaced.

¶18    In *Briese* we considered the appropriate remedy for a violation of a financial TRO during a divorce proceeding. A deputy sheriff and his wife were in the midst of a dissolution of marriage, and both were prohibited from altering the disposition of their property by a TRO. *Briese*, ¶ 6. While the divorce proceeding was ongoing, the deputy changed the beneficiary designation on his Sheriff's Retirement System (SRS) account from his wife to his minor children. *Briese*, ¶ 6. A few months later he was killed in the line of duty. *Briese*, ¶ 6. The wife brought a claim, arguing that the change of beneficiary was invalid. *Briese*, ¶ 7.

---

[2] *See infra*, ¶¶ 18-19 (discussing *Briese*).
[3] We note that, under the laws of two other UMDA states, the fact that William never served Mary Helen would render this issue moot because the TRO would not have become effective until the respondent (Mary Helen) was served. Both Colorado and Minnesota have codified the principle that a financial TRO in a dissolution action does not apply until it has been served on the respondent. *See* Colo. Rev. Stat. § 14-10-107(4)(b)(I) (2014) ("Upon filing of a petition for dissolution of marriage or legal separation by the petitioner . . . and upon personal service of the petition and summons on the respondent . . . a temporary injunction shall be in effect against both parties until the final decree is entered . . . ."); Minn. Stat. § 518.091(b) (2014) ("Upon service of the summons, the restraining provisions contained in the notice apply by operation of law upon both parties. . . ."). On the other hand, Arizona (also a UMDA state) has taken the approach that the TRO is effective upon the petitioner when the action is filed and upon the respondent when she is served with the TRO. *See* Ariz. Rev. Stat. Ann. § 25-315(3) (2014) ("The preliminary injunction is effective against the petitioner when the petition is filed and against the respondent on service of a copy of the order or on actual notice of the order . . . .").

¶19    After determining that the TRO applied to the SRS account, we considered, as a matter of first impression, the appropriate remedy for violation of a TRO by a decedent. *Briese*, ¶ 38.  We held that "a court has equitable power to order a return to the status quo when a party violating a temporary restraining order has died." *Briese*, ¶ 41.  We then ordered the district court to void the change of beneficiary. *Briese*, ¶ 42.

¶20    Mary Helen interprets our holding in *Briese* as requiring the District Court to void William's change of beneficiary.  However, in *Briese* we declined to adopt a rule that would automatically void any change of beneficiary made by a decedent in violation of a divorce TRO. *Briese*, ¶ 41.  Rather, we gave the district court the discretionary authority to void such a change if equitable principles demanded it. *Briese*, ¶ 41.  Nothing in our holding required the District Court to void the change in beneficiary in this case.

¶21    More importantly, *Briese* is distinguishable from the instant case because *Briese* involved an active and ongoing divorce proceeding where the respondent had been served with the TRO.  Here, William failed to serve Mary Helen within the three years allotted by Mont. R. Civ. P. Rule 4(t)(1), rendering the TRO ineffective.  Our holding in *Briese* does not apply to the facts of this case.

**CONCLUSION**

¶22    Because William did not serve Mary Helen with the Summons and TRO in the three years allotted for service, his dissolution petition was never placed at issue and the TRO was rendered ineffective.  Therefore, nothing prohibited William from amending his IRA on March 9, 2012.  For these reasons, we hold that the District Court did not err in finding that

8

the Adult Children are the primary beneficiaries of the account and granting summary judgment in their favor.

¶23 Affirmed.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ JIM RICE


Justice Laurie McKinnon specially concurs.

¶24 It is my opinion that the District Court correctly found that the Temporary Restraining Order was a valid court order—having never been vacated by a subsequent court order—and that the District Court correctly applied the equitable principles enunciated in *Briese v. Montana Public Employees' Retirement Board*, 2012 MT 192, 366 Mont. 148, 285 P.3d 550. I believe the Court errs in concluding, under the authority of M. R. Civ. P. 4(t)(1), that the TRO was "ineffective" after May 28, 2011.[1] Opinion, ¶ 16. In reaching this conclusion, the Court necessarily imposes an automatic dismissal, without a court order, on any action beyond the three-year timeframe. We thus ignore that the TRO was a valid court order

---

[1] The Court's analysis strays, I believe, when we attempt to define a court order as either "effective" or "ineffective." A court order may have an effective date, but the use of the term "ineffective" is imprecise and not accurate. A court order is enforceable until vacated or modified by a subsequent court order, statute, or law. It does not become "ineffective" by some process of evolution, osmosis, or the like. To the extent I have used the term "ineffective" in this special concurrence, it is a reference to the Court's terminology.

which had not been vacated or modified by a subsequent court order and similarly ignore precedent which specifically states that the language in Rule 4(t) does not "constitute mandatory language." *Pesarik v. Perjessy*, 2008 MT 337, ¶ 17, 346 Mont. 236, 194 P.3d 665 (construing former Rule 4E).

¶25 The Court appears not to comprehend the slippery slope it has created. In concluding that the TRO was "ineffective," Opinion, ¶ 16, we are authorizing a litigant to disregard a valid court order anytime, in the litigant's judgment, the three-year deadline has passed. Such an interpretation is inconsistent with not only Rule 4(t), requiring the court to dismiss an action (which can only be by court order), but also with M. R. Civ. P. 6(b), allowing for extensions of time even after time has expired, and M. R. Civ. P. 41, setting forth when and how an action is to be dismissed. As an example of the uncertainty created by our decision we need only look to the domestic violence statutes. Pursuant to § 45-5-626, MCA, when a defendant has actual knowledge of the order of protection and is thus bound by the order even though not served, the Court's interpretation of M. R. Civ. P. 4(t) would allow the defendant—who is perhaps evading service—to expect an automatic dismissal after three years. This dismissal would come without consideration by a district judge of whether the defendant had knowledge of the order and its content and without consideration of the underlying circumstances which apparently warranted the need for protection of the victim in the first instance.

¶26 To begin, the significance of the order issued in this case must be recognized. Section 40-4-121(3), MCA, states: "When the clerk of the district court issues a summons pursuant

10

to this chapter [governing termination of marriage, child custody, and support], the clerk shall issue and include with the summons a temporary restraining *order*" which restrains the parties "from transferring, encumbering, hypothecating, concealing, or in any way disposing of any property . . . without either the consent of the other party or *an order of the court . . . .*" (Emphases added.) The statute requires that the clerk include the temporary restraining order with the summons that the clerk issues. Section 40-4-121(3), MCA. The validity of the order is not diminished by the manner in which the Legislature has declared that the order be issued. It remains enforceable as an order of the court despite being generated by the clerk. *Briese*, ¶ 31 ("A temporary restraining order issued under the broad restriction of [§ 40-4-121(3), MCA] prohibits a party's attempt to change one of those designated beneficiaries during the proceeding.").

¶27 Significantly, § 40-4-121(9), MCA, states that a temporary restraining order issued pursuant to § 40-4-121(3), MCA, must conspicuously bear the language: "Violation of this order is a criminal offense under 45-5-220 or 45-5-626." Notably, the forms that this Court provides for self-represented litigants in divorce cases bear such notice.[2] The applicable statutory provision for violation of a temporary restraining order states:

> A person commits the offense of violation of an order of protection if the person, *with knowledge of the order*, purposely or knowingly violates a provision of any order provided for in 40-4-121 or an order of protection under Title 40, chapter 15. It may be inferred that the defendant had knowledge of an order at the time of an offense if the defendant had been served with the

---

[2] These are presently accessible at http://courts.mt.gov/library/topic/end_marriage.mcpx.

order before the time of the offense. *Service of the order is not required upon a showing that the defendant had knowledge of the order and its content.*

Section 45-5-626(1), MCA (emphases added). The Court's reasoning is inconsistent. Although the Court observes that "[t]he TRO terminates upon order of the court or when the petition for dissolution of marriage is voluntarily dismissed," Opinion, ¶ 11 (citing § 40-4-121(9)(b), MCA), we ignore the plain language of these statutory sections requiring that the order remain in effect until a further order of the court or dismissal. *See also* M. R. Civ. P. 41. To hold as we do that the TRO was not effective on William, who undisputedly had actual knowledge of its terms, is contrary to these statutory provisions and the general principle that orders of the court may not be ignored.

¶28 This Court's jurisprudence regarding Rule 4(t) has contained numerous contradictions and "about-faces." Cynthia Ford, *Does It Have to Be This Hard? Rule 41(e) in Montana*, 60 Mont. L. Rev. 285, 286 (1999) (discussing former Rules 4 and 41(e)). We partially came to terms with these contradictions in *Pesarik* and specifically refused to apply a mandatory interpretation to the language of the rule. *Pesarik*, ¶ 17. We reversed the district court for automatically dismissing an action and instead concluded that other rules, specifically Rule 6(b)(2), allowed for a district court to enlarge the time period for service of process. *Pesarik*, ¶ 19. An automatic dismissal or deemed ineffective interpretation placed on Rule 4(t) by the Court undermines *Pesarik,* if not directly contravenes its holdings, and needlessly confuses an area of law already difficult for practitioners and litigants. *See* Ford, *supra*, at 286.

12

¶29     Our decision to give no effect to a court order which has not been served within the three-year timeframe and to deem it automatically ineffective or dismissed is similarly at odds with rules regarding the dismissal of actions. Rule 41(a) provides that the only manner in which an action may be dismissed *without a court order* is when there has not been an answer or motion for summary judgment filed by the opposing party. Consistent with Rule 4(t), Rule 41(2) requires that all other dismissals must be by court order.

¶30     Rule 4(t)(1) provides:

> A plaintiff must accomplish service within three years after filing a complaint. Absent an appearance by defendant(s), the court, upon motion or on its own initiative, must dismiss an action without prejudice if the plaintiff fails to do so.

A significant part of the rule's provisions, omitted from the Court's analysis, is the absence of any appearance by defendant(s). An automatic dismissal would preclude any consideration by a trial court of whether, in fact, a defendant has made an appearance. This area of law is not always clear and is often a matter in dispute. Our interpretation of Rule 4(t) today would allow for an automatic dismissal when the issue of whether a defendant has made an appearance should be resolved on the merits.

¶31     The Court faults the District Court for failing to issue an order dismissing the separate dissolution action at the summary judgment hearing on November 14, 2013. Opinion, ¶ 16. The Court concludes in the instant probate proceeding that the separate dissolution action should have been dismissed for failure to perfect service by May 28, 2011. Opinion, ¶ 16. The Court presumably would require the District Court to issue an order on November 14,

13

2013, dismissing an action as of May 28, 2011—two years earlier—and further, assumes that the order would be binding on the parties. Apparently, the Court makes such a finding even though, undisputedly, no party would be served with the order or have actual notice of its terms on May 28, 2011. Indeed, one party is not even capable of receiving service, because he is deceased.

¶32 Finally, I am not opposed to the consideration of Rule 4(t) in applying the equitable principles adopted in *Briese*. It is my view that the District Court properly observed both Rule 4(t) and *Briese* here. *See Briese*, ¶ 40 (the violation of a restraining order does not *automatically* void a beneficiary change; courts have authority to grant some form of relief through use of their powers of equity). The District Court determined that this case did not involve a party violating a restraining order during the pendency of an active dissolution proceeding and that the three-year period for accomplishing service had expired, thus subjecting the proceeding to dismissal without prejudice. M. R. Civ. P. 4(t)(1).

¶33 I would thus find that the TRO was a valid court order which had not been vacated or modified by a subsequent court order. I would apply the equitable principles enunciated in *Briese*, as did the District Court, to conclude that William's beneficiary designation should not be voided. I would not interpret Rule 4(t) to require an automatic dismissal without a court order since to do so is in direct contravention to other rules of procedure and our precedent. I specially concur.

14

/S/ LAURIE McKINNON